UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FUCICH CONTRACTING, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-2885** |
| **SHREAD-KUYRKENDALL AND ASSOCIATES, INCORPORATED, PARISH OF ST. BERNARD and XL SPECIALTY INSURANCE COMPANY** | **SECTION: "M" (4)** |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion to Enforce Settlement Agreements on Behalf of Fucich Contracting, Inc. R. doc. 195**. The motion is opposed. *See* R. Docs 212, 216 and 218.

This matter was referred to the United States Magistrate Judge on May 8, 2019 to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. *See* R. Doc. 205. The motion was considered with oral argument on June 5, 2019. R.doc. 220.

**I.    Background**

This dispute is about a contract for the upgrade of two storm water drainage pumping stations located in St. Bernard Parish ("Contract"). The Contract called for the removal and replacement of the existing 48-year-old engines with new stationary engines. In the course of the performance on the contract, which called for the use of Caterpillar engine, the wrong engine was purchased; the drive shaft rotated counterclockwise and was incompatible with the counterclockwise input shaft rotation. The pumps at issue are to protect the St. Bernard Parish in the event of a flood event and due to the conflict, the pumps in the parish are partially operational and the project has been delayed for 18 months. The central issue in this dispute is

who is responsible for ordering the engine that rotated counter clockwise, Shred-Kuyrkendall & Associates, Inc. ("SKA"), the engineer or Fucich Contracting Inc. ("FCI"), the contractor both of whom were responsible for complying with the design drawings.  Due to the inability of FCI to complete the work, St. Bernard Parish ("SBPG"), sought the assistance of Travelers Casualty & Surety Company of America ("Travelers"), the surety on the project.

On or about March 26, 2019, the parties participated in a settlement conference to mitigate the damages to all parties by having FCI complete the project under a full reservation of rights. At the conclusion of the settlement conference, the parties recited the general terms of a tentative settlement agreement that was conditioned upon: (1) Traveler's approval and acceptance of the terms of the tentative settlement agreement since Traveler's was not present during and did not take part in these negotiations; (2) Traveler's assurance that SBPG's interest in the bond was protected, i.e. that the bond would remain valid and enforceable for the claims already made and that the bond in place would still be valid and enforceable for the additional work to be performed under the tentative settlement agreement; and (3) a formal, written settlement agreement reflecting the general outline of the tentative settlement agreement that had been read into the record at the conclusion of the settlement conference.  Thereafter, SBPG proceeded to draft a tentative settlement agreement that would ultimately result in an enforceable settlement agreement.

Before Traveler's could either accept or reject the terms of the tentative settlement agreement, FCI began attempting to renegotiate the terms of the tentative settlement agreement. FCI's efforts came to a head on April 10, 2019, when it disputed the funding mechanism for the change order related to the curative work.

On April 9, 2019, SBPG, through counsel, requested the intervention of the Court. At that meeting between the parties, FCI, through its principal Mr. Fucich, unequivocally stated that he did not agree to the funding provision set forth in the proposed written settlement agreement or as set forth on the transcript memorializing the tentative agreement. Mr. Fucich stated, that he only agreed to make a financial contribution on certain conditions. Based on Mr. Fucich's representations, the discussions were terminated.

The parties reconvened on April 10, 2019 to resolve and rectify the outstanding issues with FCI. After roughly two hours of discussions with Mr. Fucich, it became clear that FCI did not intend to honor any agreement that reassembled the tentative settlement agreement recited on the record. As a result, the status conference was terminated, and a minute entry issued (R.doc. 182) noting that "negotiations were unsuccessful based on the representation of the plaintiff, Mr. Fucich that there was no meeting of the mind as to the interim settlement."

On April 17, 2019, FCI circulated a letter to the undersigned, Traveler's, and SBPG seeking to explain that counsel for FCI misrepresented Mr. Fucich's position as to the funding mechanism and that FCI intended to agree to the funding mechanism set forth in the tentative settlement agreement settlement. R. doc. 195-11. Two days later, the District Judge issued an order granting the preliminary injunction requested by Traveler's as to the collateral deposit but reserved determination as to the amount until May 17, 2019.

Thereafter on May 1, 2019 after Fucich learned of its obligation to post collateral, he had a change of heart and filed the instant Motion to Enforce Settlement Agreements. All of the defendants oppose the motion and point out that there was no agreement based upon Fucich's conduct and confusion and that the subject motion should be denied.

3

## II. Standard of Review

Where the substantive rights and liabilities of the parties derive from state law, state law governs the enforcement of the settlement agreement. *Rice v. Hanover Ins. Co.*, No. CIV.A.07-6245, 2009 WL 1564811, at *1 (E.D. La. June 1, 2009) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)); *see also Lege v. Wal-Mart Louisiana LLC*, No. CIV.A. 07-01694, 2009 WL 5195949, at *3 (W.D. La. Dec. 30, 2009). Here, the substantive rights and liabilities arise from the laws of Louisiana and Louisiana Civil Code Article 3071 ("La. Civ. Code art. 3071") will govern the enforcement of the settlement agreement. *Rice*, 2009 WL 1564811 at *1.

An agreement is enforceable under La. Civ. Code art. 3071 if "1) it has been reduced to writing; *or* 2) it has been recited in open court and is capable of being transcribed from the record of the proceedings." *Id.* (emphasis in original). Thus, a settlement on the record is "unquestionably sufficient to meet the writing requirement set forth in Article 3071." *Id.* Furthermore, "recital of such agreements in open court must make full disclosure of the terms so that all parties concerned are fully advised and informed of their rights and obligations." *Kearns & Associates Co. v. Carter*, No. CIV.A. 10-439-SCR, 2014 WL 200425, at *1 (M.D. La. Jan. 17, 2014) (citing *Troxclair v. St. Charles Parish*, 450 So.2d 759, 761 (La. App. 5 Cir. 1984)). The settlement agreement shall be valid "only if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached." *Abadie v. Metro. Life Ins. Co.*, 712 So. 2d 932, 934 (La. App. 5 Cir. 1998).

## III. Analysis

FCI contends that the transcript of the agreement is enough to constitute a settlement agreement. However, the Court finds that the agreement was subject to it being confected in

4

writing and it was Fucich who feigned confusion about the terms of the agreement during the April 10, 2019 status conference to the point where the undersigned found that there was no true meeting of the minds.

The evidence shows that seven days after Fucich contended that he did not agreed to fund any portion of the project, FCI circulated a letter to the undersigned, Traveler's, and SBPG seeking to explain that counsel for FCI misrepresented Mr. Fucich's position as to the funding mechanism and that FCI intended to agree to the funding mechanism set forth in the tentative settlement agreement. R. doc. 195-11. Two days later, the District Judge issued an order granting the preliminary injunction requested by Traveler's as to the collateral deposit but reserved determination as to the amount until May 17, 2019.

Thereafter on May 1, 2019 after Fucich learned of its obligation to post collateral, he had a change of heart and filed the instant Motion to Enforce Settlement Agreements. The record establishes that there was no meeting of the minds. Fucich's on again off again approach to reaching an agreement, clearly nullified any attempt to fashion an agreement to complete the project. Unfortunately, while the goal of reaching such an agreement was aspirational and in the best interest of the public, it was impossible.

## IV. <u>Conclusion</u>

**IT IS RECOMMENDED** that Fucich Contracting, Inc. ("FCI") **Motion to Enforce Settlement Agreement on Behalf of Fucich Contracting, Inc**. (R. doc. 195) be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted

by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

                        New Orleans, Louisiana, this  7th day of June 2019.

                                           **KAREN WELLS ROBY**
                              **UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.