UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FUCICH CONTRACTING, INC. | CIVIL ACTION |
| VERSUS | NO. 18-2885 |
| SHREAD-KUYRKENDALL AND ASSOCIATES, INC., *et al.* | SECTION M (4) |

## **ORDER & REASONS**

Before the Court are two motions to dismiss filed by third-party defendant Timken Gears and Services, Inc., doing business as Philadelphia Gear ("Philadelphia Gear").[1] Third-party plaintiff Shread-Kuyrkendall and Associates, Inc. ("SKA") opposes both motions,[2] and Philadelphia Gear replies in support of its motions.[3] On October 24, 2019, the Court heard oral argument.[4] Having considered the parties' memoranda, the arguments at the hearing, the record, and the applicable law, the Court issues this Order and Reasons granting both motions.

**I.   BACKGROUND**

On or about December 22, 2016, Fucich Contracting, Inc. ("FCI") entered into a construction contract with St. Bernard Parish Government ("the Parish") to be the general contractor for the public works improvement project known as the Lake Borgne Basin Levee District Pump Station #1 & #4 Pump Upgrade ("the Project").[5] The general scope of work for the Project consisted of replacing the engines and right angle gear reducers that drive four backup storm water drainage pumps.[6] As the engineer for the Project, SKA prepared the design, bidding

---

[1] R. Docs. 315 & 316.
[2] R. Doc. 341.
[3] R. Doc. 347.
[4] R. Doc. 349.
[5] R. Doc. 119-1 at 5 (citing R. Doc. 119-4).
[6] *Id.*; R. Docs. 51-2 at 2; 93-1 at 1.

documents, and contract documents for the Project.[7]

Philadelphia Gear (operating under the name Western Gear) manufactured the pumps' original right angle gear reducers, which were manufactured, purchased, and installed in approximately 1968, and which rotate counterclockwise.[8] During the design development stage of the Project, SKA communicated multiple times with Philadelphia Gear regarding the possible replacement or refurbishing of the existing right angle gear reducers.[9] The parties also discussed potential engines to be used for the Project. Philadelphia Gear provided SKA with the original drawings of the existing gear reducers, along with a specification for a factory overhaul of the gear reducers, to which SKA made minor modifications.[10] SKA used these documents for the design of the Project and included them in the contract documents.

FCI also communicated directly with Philadelphia Gear during its preparation of the bid for the Project.[11] Philadelphia Gear submitted a proposal for the gear reducer overhaul to FCI, which FCI used for its successful bid.[12] The proposal contemplated repairing and upgrading the right angle gear reducers but not reversing their input shaft rotation.[13]

On or before March 9, 2017, FCI submitted a proposal to Project engineer SKA for a prospective replacement engine: the Caterpillar 3512C land engine, an engine that FCI says it believed was specified in its contract with the Parish.[14] On March 9, 2017, SKA issued a response to FCI's engine proposal. The response instructed FCI to "make corrections noted," which were handwritten on the bottom of the page: "(1) Contractor to verify conformity of outputs to final

---

[7] R. Docs. 51-2 at 2-3; 93-1 at 2-3.
[8] R. Doc. 189 at 4.
[9] *Id.*
[10] *Id.* at 5.
[11] *Id.*
[12] R. Doc. 298 at 9. Philadelphia Gear submitted the same proposal to other bidders. *See* R. Docs. 298-8; 298-9; 298-10; 298-11.
[13] *See* R. Doc. 298-11 at 2.
[14] R. Docs. 93-11 at 107-08; 93-15.

2

design. (2) Contractor responsible to coordinate system final design with plans and specifications."[15] On March 21, 2017, SKA also approved FCI's proposal from Philadelphia Gear for overhaul of the right angle gear reducers, with the same two conditions.[16] Despite the fact that the drive shaft of the Caterpillar 3512C land engine rotates counterclockwise (and is thus incompatible with the counterclockwise rotation of the existing right angle gear reducers), FCI proceeded to purchase Caterpillar 3512C land engines. FCI also removed the right angle gear reducers and sent them to Philadelphia Gear for the factory overhaul. The factory overhaul requested by FCI maintained the existing counterclockwise rotation.[17] On October 26, 2017, approximately ten months after beginning work on the Project, FCI discovered the rotational conflict between the engines' drive shafts and the gear reducers' input shafts upon attempting to install one of the Caterpillar 3512C land engines. The next day, FCI notified SKA of the problem in writing. FCI has since refused to move forward with the Project absent a change order that would pay FCI for the now increased cost of remediating the rotational conflict.[18]

On March 19, 2018, FCI filed suit against the Parish, SKA, and XL Specialty Insurance Co. ("XL"), SKA's insurer, seeking to recover unpaid contract balances owed to FCI for work performed on the Project and other damages.[19] FCI alleges that SKA was negligent in its design and management of the Project, including incorporating defective specifications into the contract documents.[20] The Parish asserts various counterclaims against FCI for breach of contract, tortious interference with contractual rights, and detrimental reliance,[21] as well as similar crossclaims

---

[15] R. Doc. 93-15 at 1.
[16] R. Doc. 93-16.
[17] R. Docs. 51-2 at 5; 93-1 at 4; 94-1 at 6.
[18] R. Docs. 51-2 at 6; 93-1 at 4; 94-1 at 7.
[19] R. Doc. 1.
[20] *Id.*
[21] R. Doc. 254 at 95-118 (Fourth Amended Answer and Counterclaims).

against SKA and XL.[22] On April 26, 2019, SKA and XL filed a third-party demand against Philadelphia Gear.[23] On December 9, 2019, FCI filed a third-party demand against Philadelphia Gear.[24] The Parish has not asserted any claims against Philadelphia Gear.

In its third-party demand, SKA alleges that the gear reducers manufactured by Philadelphia Gear turn in the opposite direction of the Caterpillar engines purchased by FCI for the Project and are thus "unreasonably dangerous in a reasonably anticipated use of the product."[25] Specifically, it alleges that the gear reducers were unreasonably dangerous in design because there existed an alternative design which would have prevented the damages claimed in this suit, and that Philadelphia knew, or should have known, that the engines to which the gear reducers would be connected turned in the opposite direction. SKA denies it was negligent and denies it is liable to the Parish or any other party, but argues that if it is found liable, it is entitled to recover from Philadelphia Gear all damages claimed against SKA arising out of the rotational conflict. Furthermore, SKA alleges that it relied on Philadelphia Gear's words and conduct during the design phase of the Project, that it was justified in this reliance because Philadelphia Gear is an expert in highly specialized gears, such as those at issue, and that it used the specifications, drawings, and other materials provided by Philadelphia Gear in preparing and issuing the plans and specifications for bid on the Project.[26]

---

[22] R. Doc. 254 at 118-31.
[23] R. Doc. 189.
[24] R. Doc. 364. FCI argues that if it is found liable to the Parish for failing to provide a fully functioning pumping system, Philadelphia Gear is liable to FCI for all damages for which FCI is liable to the Parish, and for all damages which FCI has independently sustained as a result of (1) Philadelphia Gear's negligent misrepresentation to FCI that its proposed scope of work for the gear reducers would comply with the Project contract documents; (2) FCI's detrimental reliance on Philadelphia Gear's assurances; and (3) Philadelphia Gear's breach of its contract with FCI. *Id.* at 19-20.
[25] R. Doc. 189 at 6.
[26] *Id.* at 7.

## II. PENDING MOTION

### A. Motion to Dismiss SKA's Products Liability Claim

Philadelphia Gear argues that SKA's third-party demand fails to state a claim upon which relief can be granted because under the applicable comparative fault regime, Philadelphia Gear cannot be held liable for contribution or indemnity to SKA.[27] It argues that because there is no contractual relationship between SKA and Philadelphia Gear, and SKA has not alleged any intentional fault on the part of Philadelphia Gear, SKA's claims against Philadelphia Gear must sound in negligence and products liability, and therefore, comparative fault applies. Philadelphia Gear explains that the 1996 amendments to articles 2323 and 2324 of the Louisiana Civil Code abolished solidary liability among alleged joint tortfeasors and implemented a system of comparative fault for non-intentional torts. Philadelphia Gear asserts that under the principles of comparative fault, one tortfeasor cannot be held responsible for the fault of another tortfeasor, and that these principles apply to the Louisiana Product Liability Act ("LPLA"), which "establishes the exclusive theories of liability for manufacturers for damage caused by their products" in Louisiana.[28] Philadelphia Gear argues that because there are no allegations which would provide for solidary liability between SKA and Philadelphia Gear, and as a matter of law, SKA does not have a right under the LPLA or any theory of Louisiana tort law to seek damages from Philadelphia Gear, SKA's third-party demand fails. Philadelphia Gear maintains that even if a claim could exist under the LPLA, SKA has not sufficiently alleged that the overhauled gear reducers were either "unreasonably dangerous" or that the alleged damages arose from a "reasonably anticipated use of the product."[29] Finally, Philadelphia Gear argues that SKA's claim for indemnity is based on SKA's alleged active or actual negligence, not technical, vicarious, constructive, or derivative

---

[27] R. Doc. 315-1 at 8-11.
[28] *Id.* at 12-13 (quoting La. R.S. 9:2800.52).
[29] *Id.* at 14-16.

negligence, and that tort indemnity is therefore unavailable to it.[30] Regardless, Philadelphia Gear adds, a claim for tort indemnity is premature until judgment against SKA is entered.[31]

In opposition, SKA argues that many of Philadelphia Gear's arguments regarding the LPLA are substantive defenses, which may not be used to attack a complaint on a motion to dismiss.[32] It maintains that it has sufficiently alleged that the right angle gear reducers manufactured by Philadelphia Gear were "unreasonably dangerous" in their "reasonably anticipated use" because it alleges that Philadelphia Gear communicated regularly with SKA during the design phase, that the gear reducers turned in an incompatible direction from the engines, and that an alternative design (*i.e.*, turning in a compatible direction) was available.[33] SKA adds that its allegations meet the definition of "claimant" in the LPLA, which includes any "entity who asserts a claim under [the LPLA] against the manufacturer of a product or his insurer for damage caused by the product."[34] SKA also argues that the tort principles of comparative fault do not preclude its LPLA claim because "legal principles *other than tort principles* apply" to the LPLA, referencing the LPLA's provision that a product may be "unreasonably dangerous because of nonconformity to express warranty," and its allowance of certain redhibition claims.[35] It asserts that the LPLA is *sui generis* and is not necessarily governed by tort principles, and that these tort concepts should not be imported into this case, which is dominated by contractual obligations.[36] SKA adds that Philadelphia Gear's proposition that a claim for tort indemnity is premature at this stage is based on a contractual indemnity case, and therefore, does not apply.[37] It concludes by

---

[30] *Id.* at 16-21.
[31] *Id.* at 22.
[32] R. Doc. 341 at 10.
[33] *Id.* at 10-11.
[34] *Id.* at 11 (quoting La. R.S. 9:2800.53(4)).
[35] *Id*. at 12-13 (emphasis in original).
[36] *Id.* at 13.
[37] *Id.* at 13-14.

requesting leave to amend or supplement its third-party demand if the Court deems its allegations insufficient.

In reply, Philadelphia Gear responds that tort principles apply to SKA's LPLA claims, which Philadelphia Gear argues are simply affirmative defenses to the claims brought against SKA by FCI and the Parish, and therefore, should be dismissed as a third-party demand against Philadelphia Gear.[38] It maintains that SKA's third-party demand does not allege any defect in the gear reducers themselves, but rather alleges that a problem arose when the gear reducers were connected to other components of the Project, and thus the flaw is in SKA's design, or FCI's execution of the Project.[39] Philadelphia Gear adds that, because it was responsible for only one component of the Project, it could not reasonably have anticipated that SKA, as the design engineer, and FCI, as the contractor, would not have ensured that all components of the Project were compatible.

### B. Motion to Dismiss SKA's Detrimental Reliance Claim

Philadelphia Gear argues that SKA's third-party demand is also defective on the grounds that it fails to state a detrimental reliance claim.[40] Philadelphia Gear argues that SKA has not met the requisites for detrimental reliance because (1) SKA does not allege that Philadelphia Gear represented that the existing gear reducers would be operational with new engines rotating in a counterclockwise direction, but rather admits that Philadelphia Gear provided accurate drawings showing the rotational direction of the existing gear reducers; (2) SKA does not allege that it had no other alternative means of determining the rotation of the existing engines and gear reducers; and (3) this Court has already found that the actual rotation could be found in the contract

---

[38] R. Doc. 347 at 7-10.
[39] *Id.* at 10.
[40] R. Doc. 316 at 2.

7

documents which SKA prepared.[41] As SKA cannot show that Philadelphia Gear misled it, and SKA had actual knowledge of the matters of which it complains, Philadelphia Gear argues any claim for detrimental reliance is without merit.

SKA responds that it has sufficiently alleged the three elements of detrimental reliance: (1) it alleges that Philadelphia Gear provided specifications for the gear reducers without noting the existing rotation, visited the site, and reviewed SKA's draft specifications ("a representation by conduct or word"); (2) it alleges that engineers commonly rely on such specifications by manufacturers and that Philadelphia Gear is an expert in this field ("justifiable reliance"); and (3) it alleges that it used the materials from Philadelphia Gear in preparing its design for the Project ("change in position to one's detriment because of the reliance").[42] SKA adds that Philadelphia Gear's assertion in its first motion to dismiss[43] that tort law governs the allegations in the third-party demand is incorrect because detrimental reliance does not sound in tort.[44]

In reply, Philadelphia Gear argues that the first element of a detrimental reliance claim has not been met because, even if SKA's allegations are true, SKA could not reasonably rely on the specifications provided and reviewed by Philadelphia Gear during the bid process as public bid law precludes the specification of a particular brand of product in a government bid, and thus, the sample specifications were only "gratuitous."[45] Philadelphia Gear asserts that SKA has not met the second element because professional statutory standards governing the practice of engineering preclude SKA and its design engineer from relying on any party in preparing specifications and contract documents.[46] Philadelphia Gear maintains that SKA has not met the third element because

---

[41] *Id.* at 7-11.
[42] R. Doc. 341 at 5-6.
[43] R. Doc. 315.
[44] R. Doc. 341 at 7-8.
[45] R. Doc. 347 at 4-5.
[46] *Id.* at 5-6.

8

it has admitted, and this Court has held, that the contract documents reflected the actual rotation of the existing gears, and so any alleged omission in Philadelphia Gear's specifications upon which SKA may have relied is "moot."[47] Finally, Philadelphia Gear asserts that because detrimental reliance requires that the relevant information be unavailable from any other source, and SKA has failed to plead that they could not otherwise obtain the information, this claim is not viable.[48]

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads

---

[47] *Id.* at 6.
[48] *Id.* at 6-7.

9

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th

Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Analysis**

Under Federal Rule of Civil Procedure 14, a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). A third-party plaintiff may not, however, implead a third-party defendant "merely because [the third-party defendant] may be liable to the *plaintiff*." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 368 n.3 (1978) (emphasis in original). A third-party demand is improper when it "amounts to no more than a mere offer of a party to the plaintiff." *Smallwood ex rel. T.M. v. New Orleans City*, 2015 WL 5883802, at *5 (E.D. La. Oct. 8, 2015) (citing advisory committee's notes on 1946 amendment to Rule 14). A third-party claim must be secondary or derivative of the main claim and "the original defendant must be able to demonstrate a basis for the third-party defendant's liability to the defendant (also known as the third-party plaintiff)." *USAA Gen. Indem. Co. v. Scott*, 2016 WL 8711678, at *2 (E.D. La. July 29, 2016) (quoting *McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849-50 (5th Cir. 1978)) (internal quotation marks omitted); *see also Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 316 F.R.D. 179, 182 (E.D. La. 2016) (citations omitted).

A third-party plaintiff must base its third-party claim on "indemnity, subrogation, contribution, express or implied warranty, or some other theory" of secondary or derivative liability. *Martco Ltd. P'ship v. Bruks Inc.*, 430 F. App'x 332, 334 (5th Cir. 2011) (quoting 6

11

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1446, at 415-20 (3d ed. 2010)). If a right to relief does not exist under the applicable substantive law, the third-party claim must be dismissed. *Id.* at 335. State substantive law determines whether the right to contribution or indemnity exists. *Smallwood*, 2015 WL 5883802, at *4 (citing *Gen. Dynamics Corp. v. Adams*, 340 F.2d 271, 279 (5th Cir. 1965)).

### 1. Products Liability Claim and Comparative Fault

SKA argues that if it is found liable to any party in this matter, it is entitled to recover from Philadelphia Gear all damages arising out of the rotational conflict caused by the design of the gear reducers that Philadelphia Gear manufactured.[49] The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products" in Louisiana, and so this products liability claim arises under the LPLA. La. R.S. 9:2800.52. Third-party tort claims for contribution or indemnification, however, are "nearly extinct in Louisiana." *Smallwood*, 2015 WL 5883802, at *4 (citing *Beauregard v. State ex rel. DOTD*, 21 So. 3d 442, 443 (La. App. 2009). This is because the 1996 amendments to articles 2323 and 2324 of the Louisiana Civil Code eliminated solidary liability among non-intentional tortfeasors and implemented a system of comparative fault. *Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism*, 828 So. 2d 530, 535 (La. 2002).

Article 2323 provides in pertinent part:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined …. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
>
> B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of

---

[49] R. Doc. 341 at 6.

liability, regardless of the basis of liability.

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

La. Civ. Code art. 2323. And article 2424 provides in pertinent part:

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss ….

La. Civ. Code art. 2324. Therefore, each non-intentional tortfeasor may only be held liable for his own share of fault, and a joint tortfeasor may not be held solidarily liable with any other person for damages attributable to the fault of another. *Dumas*, 828 So. 2d at 537. This regime applies to products liability cases. *See 425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co.*, 151 F. Supp. 3d 715, 721 (E.D. La. 2015) (citing *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, 2011 WL 2214936, at *2 (W.D. La. June 6, 2011)). After all, the Louisiana Supreme Court has stated that the language of these two articles "clearly and unambiguously provides that comparative fault principles apply in any action for damages and apply to any claim asserted under any law or legal doctrine or theory of liability." *Thompson v. Winn-Dixie Montgomery, Inc.*, 181 So. 3d 656, 664 (La. 2015) (internal quotation marks and citation omitted).

SKA argues that Louisiana's comparative fault regime should not be applied to LPLA cases because the LPLA incorporates "other" legal principles aside from tort.[50] But "Louisiana state courts and federal courts have routinely held that pure comparative fault applies to LPLA cases." *Allen v. C & H Distribs., LLC*, 2013 WL 4506233, at *3 (W.D. La. Aug. 22, 2013) (citations

---
[50] R. Doc. 341 at 12.

13

omitted). To support its argument that non-tort principles apply to the LPLA, SKA points to one of the four theories of liability under the LPLA (*viz.*, nonconformity to an express warranty) and the LPLA's allowance of redhibition claims.[51] Not only does SKA provide no cited authority for this argument, it does not even base its third-party claim on either nonconformity to an express warranty or redhibition, making these provisions irrelevant here.

SKA also argues that the obligations in this matter mostly arise out of contract, and that therefore tort concepts should not be applied. But SKA does not allege any contractual relationship between it and Philadelphia Gear. SKA itself states that its third-party demand "does not allege or even imply a contractual indemnity claim."[52] At the same time, SKA insists that its claims against Philadelphia Gear, including its LPLA claim, do not sound in tort.[53] As Philadelphia Gear responds, this assertion – that the LPLA does not sound in tort – has no basis in law.[54] SKA wants to have its cake (a tort-based remedy) and eat it too (without the tort regime). The Court, however, will not depart from the mandatory application of comparative fault in Louisiana products liability cases. *See Allen*, 2013 WL 4506233, at *4. Under this regime, SKA can only be held liable to FCI and/or the Parish for its own fault. SKA may not be held liable for any fault on the part of Philadelphia Gear, and therefore, under a comparative fault regime, SKA has no third-party claim against Philadelphia Gear based on products liability.[55] SKA's interests remain protected under

---

[51] *Id.* at 12-13.
[52] R. Doc. 341 at 14.
[53] *Id.* at 8. Philadelphia Gear does not dispute SKA's argument that its detrimental reliance claim does not sound in tort.
[54] The LPLA replaces and codifies products liability tort law; it provides the exclusive theories of tort liability available to a products liability plaintiff in Louisiana. *See* John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 565-71 (1989).
[55] SKA's third-party demand against Philadelphia Gear purports to assert an LPLA claim for defective design. *See* La. R.S. 9:2800.54(B)(2), 9:2800.56. SKA alleges that "Philadelphia Gear knew, or should have known, both in the design phase and construction phase, … that the engines to which these gears would be connected turned in the opposite direction of the gears." R. Doc. 189 at 6. Even if true, Philadelphia Gear might have reasonably expected that the design engineer (SKA) or contractor (FCI) would have ensured that the gear reducers and engines were compatible. SKA does not allege that the gear reducers themselves were unreasonably dangerous, but only "render[ed]" unreasonably dangerous when attached to the engines. Nevertheless, because SKA's third-party demand

14

this regime in that Philadelphia Gear's alleged fault may be accounted for by the jury when apportioning fault, so that any fault on the part of Philadelphia Gear will not be attributed to SKA.[56]

Only if SKA demonstrates that it has asserted a valid claim for contribution or indemnity, beyond the compass of comparative fault, can its third-party tort claim survive. *See 425 Notre Dame, LLC*, 151 F. Supp. 3d at 721.

### 2. Contribution

"[C]ontribution is allowed only among tortfeasors who are solidarily liable." *Hamway v. Braud*, 838 So. 2d 803, 807 (La. App. 2002) (citation omitted). Article 2324 (as amended in 1996), only permits intentional or willful tortfeasors to be held liable *in solido*. La. Civ. Code art. 2324. SKA has not alleged any intentional tort against Philadelphia Gear, nor has the Parish or FCI alleged any intentional tort against SKA. Absent an intentional tort, solidary liability cannot exist between SKA and Philadelphia Gear, and so SKA does not have a valid claim for contribution against Philadelphia Gear. *See 425 Notre Dame, LLC*, 151 F. Supp. 3d at 721.

### 3. Indemnity

Under principles of equity, indemnity permits "a party not actually at fault, whose liability results from the fault of others" to recover from those parties at fault. *Nassif v. Sunrise Homes, Inc.*, 739 So. 2d 183, 186 (La. 1999) (quoting *Bewley Furniture Co. v. Md. Cas. Co.*, 285 So. 2d 216, 219 (La. 1973)).[57] This "imposed liability" is referred to as "technical, constructive, vicarious

---

against Philadelphia Gear under the LPLA is dismissed under comparative fault principles, it is unnecessary for the Court to reach the merits of the claim.

[56] Philadelphia Gear conceded during oral argument that SKA could request that Philadelphia Gear be listed on the verdict form for purposes of apportioning fault. Now that FCI has filed a third-party demand against Philadelphia Gear, which includes claims for both derivative and direct liability, the question whether Philadelphia Gear will be listed on the verdict form will likely be confronted, regardless whether SKA makes such a request.

[57] "In the absence of an express contractual provision, claim for legal indemnity 'arises only where the fault of the person seeking indemnification is solely constructive or derivative, from failure or omission to perform some legal duty, and may only be had against one who, because of his act, has caused such constructive liability to be imposed.'" *425 Notre Dame, LLC*, 151 F. Supp. 3d at 721 (quoting *Hamway*, 838 So. 2d at 806). SKA does not make a claim for contractual indemnity, so only tort indemnity is examined. *See supra* text accompanying note 52.

[or] derivative" liability. *Id.* To qualify for tort indemnity, which is extremely limited, a party "must be free of actual fault." *Romero v. Witherspoon*, 7 F. Supp. 2d 808, 812 (W.D. La. 1998) (citing *Appalachian Corp. v. Brooklyn Cooperage Co.*, 91 So. 539, 541 (La. 1922)). Courts scrutinize the nature of that party's alleged fault to determine if a theoretical basis for indemnity exists. *Martco Ltd. P'ship*, 430 F. App'x at 335.

The Parish and FCI allege that SKA negligently designed and managed the Project.[58] Like the plaintiffs' allegation in *Romero* that the defendant "negligently failed to diagnose [plaintiffs' daughter]," this theory of relief "is not passive, technical, or vicarious negligence." 7 F. Supp. 2d at 812. SKA cannot be held liable unless it actually failed to properly design and/or manage the Project. *See Solstice Oil & Gas I LLC v. OBES Inc.*, 2014 WL 5500685, at *5 (W.D. La. Oct. 30, 2014) ("[Plaintiff] alleges that [defendant] engaged in active negligence when it alleges that, for example, [defendant] negligently failed to properly [drill an oil well. Defendant] would not be held liable for these acts or omissions unless [defendant] performed or failed to perform them. Thus, [defendant's] fault could not be constructive or derivative.").

In *Martco Limited Partnership*, the Fifth Circuit held that the third-party plaintiff's allegations stated a plausible basis for indemnity when the third-party plaintiff, a manufacturer, alleged "that any liability that it may have is only technical and a result of the faulty and untimely specifications, designs and other information provided by [the third-party defendant] upon which [the third-party plaintiff] wholly relied in manufacturing the allegedly defective equipment for [the plaintiff]." 430 F. App'x at 337-38. SKA attempts to make a similar claim but is unable to do so. The plaintiff in *Martco* alleged that the defendant-manufacturer failed to timely deliver and install equipment, and that it suffered damages due to defects in the equipment following installation. *Id.*

---

[58] *See* R. Docs. 1; 36.

at 333. On the face of the third-party complaint, it was plausible that the manufacturer's alleged acts and omissions and the equipment's alleged defects could be wholly the fault of the third-party defendant, the engineer – that is, that the defendant, as third-party plaintiff, was *wholly without fault*. Here, however, SKA cannot show that it is wholly without fault given the allegations against it.

The Parish and FCI allege that SKA was negligent in its design and management of the Project, and in turn, SKA alleges that Philadelphia Gear specified incompatible gear reducers and that SKA justifiably relied on Philadelphia Gear's design specification. Neither of these allegations, on their face, can completely absolve SKA of its own alleged fault. Even if SKA relied on Philadelphia Gear's allegedly faulty drawings and specifications, such reliance cannot mean that SKA, if found negligent, was not negligent itself in its design or management of the Project. If, for example, SKA is found negligent for incorporating deficient specifications into the contract documents, that Philadelphia Gear provided those specifications cannot mean SKA was not actually negligent in incorporating deficient specifications into the contract documents for which it was responsible as the Project engineer. Accordingly, SKA's alleged fault is more than technical or constructive, and any alleged fault on the part of Philadelphia Gear cannot serve as the basis for tort indemnity. Because there is "no foreseeable combination of findings, viewing the allegations of the pleadings in the light most favorable to [SKA], that could result in [SKA] being cast in judgment for mere technical or passive fault," its third-party claim for indemnity against Philadelphia Gear should be dismissed. *425 Notre Dame, LLC*, 151 F. Supp. 3d at 722 (quoting *Martco Ltd. P'ship*, 430 F. App'x at 335) (citation and original alterations omitted).

### 4. Detrimental Reliance

SKA argues further that neither comparative fault nor tort indemnity principles apply to its third-party demand because its detrimental reliance claim does not sound in tort – an assertion

17

Philadelphia Gear does not dispute. *See Durio v. Metro. Life Ins. Co.*, 653 F. Supp. 2d 656, 666 (W.D. La. 2009) ("A claim under [Louisiana Civil Code article 1967] is based on promissory estoppel, not tort.") (citing *Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 770 (5th Cir. 1990)); *see also Miller v. Lowe*, 2009 WL 4730201, at *3 (W.D. La. 2009) (explaining that, in Louisiana, the elements for detrimental reliance and promissory or equitable estoppel are the same and based on the same civil code provision) (citations omitted). Regardless, SKA's claim for detrimental reliance fails on the merits. Under article 1967:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. … Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code. art. 1967. A party seeking to establish detrimental reliance must prove three elements: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005) (citations omitted). The focus of this analysis is "whether a representation was made in such a manner that the promisor should have expected the promise to rely upon it, and whether the promisee so relies to his detriment." *Id.* The doctrine is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Id.* (citations omitted). Detrimental reliance claims are "not favored in Louisiana" and "must be examined carefully and strictly." *In re Ark-La-Tex Timber, Co.*, 482 F.3d 319, 334 (5th Cir. 2007) (citations omitted). A claim for detrimental reliance will not lie "[i]f the evidence reveals that the asserting party had actual knowledge, or a ready and convenient means of determining the facts concerning representations made." *Miller*, 2009 WL 4730201, at *3 (quoting *Knippers v. Dr. W.W. Lambard*, 620 So. 2d 1368, 1375 (La. App. 1993)).

SKA's detrimental reliance claim fails in all three respects. First, any representation by

18

conduct or word by Philadelphia Gear was necessarily gratuitous because public bid law forbids any brand, make, or manufacturer from being specified for a product in a bid for a public works contract, with a few exceptions not present here. *See* La. R.S. 38:2212.1(C); 38:2290.[59] Neither does SKA allege "the typical factual misrepresentation found in detrimental reliance cases." *Ark-La-Tex Timber*, 482 F.3d at 334. Instead, SKA alleges that the specification Philadelphia Gear furnished to it "did not note or specify any rotation of the gear."[60] SKA also alleges that "Philadelphia Gear furnished to SKA the original drawings of the original right angle gears," which *did* show the existing rotation of the gear reducers.[61] Thus, Philadelphia Gear made no misrepresentation by its silence concerning the gear rotation in its design because, on the one hand, public bid law prevented its dictating the rotation given that the brand of engine selected could have called for a different rotation (as it did), and on the other hand, Philadelphia Gear disclosed fully the rotation of the existing gear reducers. Second, any reliance by SKA was not justified because even if Philadelphia Gear "is an expert in these highly specialized gears" and "represents it has a world-class engineering team," SKA and its engineers were ultimately responsible for the design of the Project.[62] Third, SKA has not alleged that this reliance caused it to change its position to its detriment. Even if it did use Philadelphia Gear's materials, the actual rotation of the gear reducers was incorporated into the contract documents which SKA prepared.

In conclusion, SKA cannot state a cause of action for detrimental reliance against Philadelphia Gear, though this claim as a third-party demand might not be barred by the application of comparative fault and indemnity principles.

---

[59] This public bid law issue was discussed in the Court's previous Order & Reasons. *See* R. Doc. 300 at 24.
[60] R. Doc. 189 at 5.
[61] *Id.*
[62] *Id.* at 7. As Philadelphia Gear explains, under state regulatory law, when the SKA licensed professional engineer affixed his professional seal to the Project design, the design became his responsibility. R. Doc. 347 at 5 & n.13 (citing La. Admin. Code tit. 46 § 2503(D)(3)).

### 5. Amendment

SKA requests that it be permitted to amend its third-party demand should the Court determine that its current allegations are not sufficient.[63] The Court finds that because no amendment suggested by SKA, or which SKA could suggest, would cure the noted deficiencies in its third-party claim, or assert a valid theory of derivative liability on the part of the proposed third-party defendant, any amendment would be futile. *See, e.g., Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F. 2d 314 (5th Cir. 1991) (amendments futile when mineral lease unambiguously precluded asserted theory of liability); *Verhein v. South Bend Lathe, Inc.*, 598 F. 2d 1061 (7th Cir. 1979) (leave properly denied where proposed amendment failed to allege facts supporting valid theory of products liability).

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Philadelphia Gear's motions to dismiss (R. Docs. 315 & 316) are GRANTED and SKA's third-party claim is hereby dismissed.

New Orleans, Louisiana, this 17th day of December, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[63] R. Doc. 341 at 14-15.