UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FUCICH CONTRACTING, INC.                          CIVIL ACTION

VERSUS                                            NO. 18-2885

SHREAD-KUYRKENDALL AND                            SECTION M (4)
ASSOCIATES, INC., *et al.*

## ORDER & REASONS

Before the Court is a motion filed by third-party defendant Timken Gears and Services,

Inc., doing business as Philadelphia Gear ("Philadelphia Gear"),[1] to dismiss the third-party demand

of plaintiff and third-party plaintiff Fucich Contracting, Inc ("FCI").[2]  FCI opposes the motion,[3]

as does defendant Shread-Kuyrkendall and Associates, Inc. ("SKA").[4]  Philadelphia Gear replies

---

[1] R. Doc. 390.

[2] R. Doc. 364.

[3] R. Doc. 392.

[4] R. Doc. 393.  Philadelphia Gear argues that SKA lacks standing to oppose its motion to dismiss FCI's third-party demand and that SKA's opposition should therefore be stricken from the record.  R. Doc. 404 at 2-3. Philadelphia Gear asserts that SKA is not a party to FCI's third-party demand and that though Rule 12(b)(6) of the Federal Rules of Civil Procedure does not address whether "non-adverse" parties have standing to oppose a motion to dismiss, this Court has interpreted Rule 56 to permit "only a party against whom a claim, counterclaim or cross-claim is asserted [to] seek or oppose a motion for summary judgment."  R. Doc. 404 at 2 (citing *Thurman v. Wood Grp. Prod. Servs., Inc.*, 2010 WL 5207587 (E.D. La. Dec. 14, 2010), and *Dorvin v. 3901 Ridgelake Drive, LLC*, 2012 WL 1057599 (E.D. La. Mar. 28, 2012)).  This holding rests, however, on an interpretation of the term "party" under Rule 56 to mean that a co-defendant is not a "party" to a motion for summary judgment filed by another defendant, absent any cross-claims between the defendants.  *See Dorvin*, 2012 WL 1057599, at *4; *Thurman*, 2010 WL 5207587, at *1; *see also C.F. Bean Corp. v. Clayton Indus., Ltd.*, 1996 WL 470644, at *1 (E.D. La. Aug. 19, 1996).  Philadelphia Gear points the Court to no case espousing a similar interpretation under Rule 12.  The holding in the Rule 56 cases is also specifically conditioned on "the motion [being] unopposed by the plaintiff."  *Dorvin*, 2012 WL 1057599, at *4 (quoting *Thurman*, 2010 WL 5207587, at *1); *see also C.F. Bean Corp.*, 1996 WL 470644, at *1 ("Further, [the plaintiff] is the only party which brought a claim against [the movant].  [The plaintiff] has not opposed this motion for summary judgment and it would be the best party in the best position to produce evidence [to defeat the motion].").  Indeed, other courts which have ruled similarly have reasoned that "[r]equiring Plaintiff to prosecute her claims against Defendants when she no longer believes such claims to be viable would be contrary to the principle of Rule 56 that trials (or portions thereof) should be avoided when appropriate."  *Rosenbaum v. Freight, Lime & Sand Hauling, Inc.*, 2012 WL 4832248, at *2 (N.D. Ind. Oct. 10, 2012) (quoting *Blonder v. Casco Inn Residential Care, Inc.*, 2000 WL 761895, at *1 (D. Me. May 4, 2000)) (alteration omitted).  In other words, if the party who faces having its claim dismissed does not muster an opposition, another party should not be able to force the claim to remain live.  *See id.* (quoting *Hawes v. Blast-Tek, Inc.*, 2010 WL 2680778, at *2 (D. Minn. July 2, 2010): "Plaintiff is the master of his claims.  He has concluded … that he lacks a good-faith basis to continue to press his claims against the moving Defendants.  The Court does not believe that one co-defendant can force Plaintiff to maintain those claims … simply

to both parties in support of its motions.[5]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons dismissing FCI's third-party demand against Philadelphia Gear.

## I.    BACKGROUND

On or about December 22, 2016, FCI entered into a construction contract with the St. Bernard Parish Government (the "Parish") to be the general contractor for the public works improvement project known as the Lake Borgne Basin Levee District Pump Station #1 & #4 Pump Upgrade (the "Project").[6]  The general scope of work for the Project consisted of replacing the engines and upgrading right angle gear reducers that drive four backup storm water drainage pumps.[7] As the engineer for the Project, SKA prepared the design, bidding documents, and contract documents for the Project.[8]

Philadelphia Gear (formerly operating under the name Western Gear) manufactured the pumps' original right angle gear reducers, which were manufactured, purchased, and installed in approximately 1968, and which rotate counterclockwise.[9]  Beginning in February 2014, during the design development stage of the Project, SKA communicated multiple times with Philadelphia Gear regarding the possible replacement or refurbishing of the existing right angle gear reducers.[10] The parties also discussed potential engines to be used for the Project.[11]  According to FCI, in

because it does not like the outcome if co-defendants are dismissed.") (internal brackets omitted).  Here, however, FCI has filed an opposition to the Rule 12(b)(6) motion to dismiss its third-party demand, eliminating the concern voiced in those cases.  Furthermore, courts have rejected arguments that a party does not have standing to oppose a Rule 12(b)(6) motion to dismiss directed to a co-defendant, *see Weseman-Roth v. Conversion Solutions, LLC*, 2007 WL 656263, at *1 n.2 (D. Minn. Feb. 28, 2007), and even more pertinently, that a plaintiff does not have standing to oppose a Rule 12(b)(6) motion to dismiss a third-party complaint.  *See Y-Tex Corp. v. Schenker, Inc.*, 2011 WL 2292352, at *1 n.2 (W.D. Wash. June 8, 2011).  Accordingly, the Court will consider SKA's opposition.
     [5] R. Docs. 402; 404.
     [6] R. Doc. 119-1 at 5 (citing R. Doc. 119-4).
     [7] *Id.*; R. Docs. 51-2 at 2; 93-1 at 1; 364 at 4.
     [8] R. Docs. 51-2 at 2-3; 93-1 at 2-3.
     [9] R. Doc. 373 at 2.
     [10] *Id.*; R. Doc. 364 at 6.
     [11] R. Doc. 364 at 6-9.

March 2014, SKA informed Philadelphia Gear of its selection of a replacement engine for the design, though it did not inform Philadelphia Gear that the existing Deutz engines had a "non-standard" clockwise drive shaft rotation, which was the opposite direction of rotation of the proposed Caterpillar replacement engines.[12]  FCI alleges that "Philadelphia Gear took no action to confirm the rotation direction of the proposed replacement engines," though on information and belief, it had in its possession documents and information regarding the existing gear reducers from which it could have deduced the rotational direction of the existing engines.[13]  On April 9, 2014, Philadelphia Gear submitted to SKA drawings and draft specifications for the scope of work to overhaul the gear reducers, which did not include a reversal of the rotational direction of the gear reducers.[14]   According to FCI, SKA proposed using these documents, along with specifications for the engine replacement provided by Louisiana Machinery (the vendor for Caterpillar engines in Louisiana), for the final design of the Project, which the Parish approved.[15] On or about October 4, 2016, Philadelphia Gear allegedly downloaded from the "central bidding" website the full set of plans and specifications for the Project (which are encompassed in the term "Contract Documents" contemporaneously used by the parties); the proposed scope of work for the gear reducers included in the Contract Documents was identical to that which Philadelphia Gear had submitted to SKA, which did not contemplate reversing the gear reducers' input shaft rotation.[16]

FCI alleges that it originally heard about the Project from a representative of Philadelphia Gear, "who informed FCI that Philadelphia Gear had worked with SKA to develop the design for

---

[12] R. Doc. 364 at 9.
[13] *Id.*
[14] *Id.* at 10.
[15] *Id.* at 11.
[16] *Id.* at 12.

the Project."[17]   During its preparation of the bid for the Project, FCI asked Philadelphia Gear to provide it with a proposal for the scope of work to overhaul the right angle gear reducers, which it did on October 27, 2016; FCI used this proposal in conjunction with its successful bid.[18]   The proposal contemplated repairing and upgrading the right angle gear reducers but not reversing their input shaft rotation.[19]   FCI alleges that "Philadelphia Gear represented to FCI … that Philadelphia Gear's proposal for the right angle gear scope of work met the requirements of the Contract Documents."[20] After being awarded the contract for the Project (the "FCI-Parish Contract"),[21] "FCI issued a purchase order to Philadelphia Gear" for the overhaul of the gear reducers, "as described in Philadelphia Gear's proposal to FCI."[22]

On January 12, 2017, in response to its request, FCI provided Philadelphia Gear with technical data sheets for "the replacement engines which FCI was furnishing for the Project," that is, the Caterpillar 3512C (HD) land mechanical engine.[23]   These data sheets showed the rotational direction of the engine (counterclockwise).  On or before March 9, 2017, FCI submitted a proposal to SKA for this prospective replacement engine that FCI says it believed was specified in the Contract Documents and hence in the FCI-Parish Contract.[24]   On March 9, 2017, SKA issued a response to FCI's engine proposal.  The response instructed FCI to "make corrections noted," which were handwritten on the bottom of the page: "(1) Contractor to verify conformity of outputs to final design. (2) Contractor responsible to coordinate system final design with plans and specifications."[25]   On March 20, 2017, Philadelphia Gear furnished to FCI its submittal package

---

[17] *Id.*
[18] *Id.* at 13.
[19] *Id.* at 14; *see* R. Doc. 298-11 at 2.
[20] R. Doc. 364 at 15.
[21] The FCI-Parish Contract incorporated the Contract Documents into the terms of the parties' agreement.
[22] *Id.* at 16.
[23] *Id.*
[24] R. Docs. 93-11 at 107-08; 93-15.
[25] R. Doc. 93-15 at 1.

for the scope of work for the gear-reducers overhaul.[26]  The submittal package included a drawing which showed that the overhauled gear reducers would maintain the same rotational direction as the existing gear reducers (counterclockwise).  That same day, FCI sent the submittal to SKA for review and approval.  On March 21, 2017, SKA approved FCI's proposal from Philadelphia Gear for overhaul of the right angle gear reducers, with the same two conditions it gave for the engine proposal.[27]

Despite the fact that the drive shaft of the Caterpillar 3512C (HD) land mechanical engine rotates counterclockwise (and is thus incompatible with the counterclockwise rotation of the existing right angle gear reducers), FCI purchased the Caterpillar engines and sent the right angle gear reducers to Philadelphia Gear for the factory overhaul, which, as requested by FCI, maintained the existing counterclockwise rotation.[28]  On October 26, 2017, approximately ten months after beginning work on the Project, FCI discovered the rotational conflict between the replacement engines' drive shafts and the gear reducers' input shafts upon attempting to install one of the Caterpillar engines (the "Rotational Conflict").[29]  According to FCI, that same day, FCI notified SKA of the problem and SKA instructed FCI to seek Philadelphia Gear's assistance in developing a solution.[30]  FCI has since refused to move forward with the Project absent a change order that would pay FCI for the now increased cost of remediating the Rotational Conflict.[31]  SKA and the Parish blame FCI for the Rotational Conflict and assert that FCI had an obligation under the FCI-Parish Contract to provide a fully-functioning pumping system.[32]

---

[26] R. Doc. 364 at 17.
[27] R. Doc. 93-16.
[28] R. Docs. 51-2 at 5; 93-1 at 4; 94-1 at 6.
[29] R. Doc. 364 at 18.
[30] *Id.*
[31] R. Docs. 51-2 at 6; 93-1 at 4; 94-1 at 7.
[32] R. Doc. 364 at 19.

On March 19, 2018, FCI filed suit against the Parish, SKA, and XL Specialty Insurance Co. ("XL"), SKA's insurer, seeking to recover unpaid contract balances owed to FCI for work performed on the Project and other damages.[33]  FCI alleges that SKA was negligent in its design and management of the Project, including incorporating defective specifications into the Contract Documents.[34]  The Parish asserts various counterclaims against FCI for breach of contract, bad faith breach of contract, and detrimental reliance,[35] as well as similar crossclaims against SKA and XL.[36]  On April 26, 2019, SKA and XL filed a third-party demand against Philadelphia Gear,[37] which the Court dismissed on December 17, 2019 (the "December 17, 2019 Order & Reasons").[38] On December 9, 2019, FCI filed a third-party demand against Philadelphia Gear.[39]  The Parish has not asserted any claims against Philadelphia Gear.

In its third-party demand against Philadelphia Gear, FCI asserts that if it is found liable to the Parish for failing to provide a fully-functioning pumping system, Philadelphia Gear is liable to FCI for all damages for which FCI is liable to the Parish, and for all damages which FCI has independently sustained, as a result of: (1) Philadelphia Gear's negligent misrepresentation to FCI that its proposed scope of work for the gear reducers would comply with the Contract Documents; (2) FCI's detrimental reliance on Philadelphia Gear's assurances; and (3) Philadelphia Gear's breach of its agreement with FCI by furnishing FCI with a design for the gear-reducer overhaul, and by furnishing FCI with overhauled gear reducers, which failed to comply with the requirements of the Contract Documents.[40]

---

[33] R. Doc. 1.
[34] *Id.*
[35] R. Doc. 369 at 131-55 (Amended Answer to Fourth Amended Complaint and Amended Counterclaim).
[36] *Id.* at 155-68.
[37] R. Doc. 189.
[38] R. Doc. 373.
[39] R. Doc. 364.
[40] *Id.* at 19-20.

## II.    PENDING MOTION

Philadelphia Gear moves the Court to dismiss FCI's third-party demand in its entirety. Regarding FCI's negligent misrepresentation claim, Philadelphia Gear argues that under Louisiana's comparative fault regime, FCI cannot seek contribution against it, nor can FCI seek tort indemnity against it because the allegations against FCI do not allow FCI to show that its fault, if proven, is passive or technical.[41]  As to FCI's detrimental reliance claim, Philadelphia Gear asserts that FCI cannot satisfy the requisite elements of such a claim because any representation it made during the bidding phase was necessarily gratuitous; it made no misrepresentation by its silence concerning the rotational direction during the bidding phase because the replacement engine could not have been specified then; any reliance by FCI on Philadelphia Gear was not justified because responsibility for the design of the Project lay with the engineer, SKA; and FCI cannot show it relied on Philadelphia Gear's silence concerning the replacement engine because FCI had already ordered the engines when it advised Philadelphia Gear of the selection.[42]  Finally, Philadelphia Gear argues that FCI cannot maintain its breach-of-contract claim against it because: (1) the Court has found that any materials furnished by Philadelphia Gear which were used by SKA in the Contract Documents became SKA's responsibility as Project engineer; (2) the Court has found that the Contract Documents included data showing the rotational direction of the existing equipment, and that the task of ensuring compatibility between the engine and gear reducers was placed on FCI by the FCI-Parish Contract; (3) FCI's third-party demand does not articulate how the refurbished gear reducers fail to comply with the plans and specifications in the Contract Documents; and (4) FCI admitted in correspondence to SKA that the refurbished gear

---

[41] R. Doc. 390-1 at 8-11.
[42] *Id.* at 11-13.

reducers met the requirements of the Contract Documents.[43]

In opposition, FCI begins by arguing that Philadelphia Gear's motion is improper and should be denied solely because Philadelphia Gear seeks to present evidence not in the record and thereby to dismiss the third-party demand prematurely under a summary-judgment standard.[44] Next, FCI asserts that its allegations satisfy the elements of a negligent misrepresentation claim, and that any argument that tort indemnity is unavailable is premature.[45]  FCI asserts that it has properly pleaded a detrimental reliance claim against Philadelphia Gear because Philadelphia Gear informed FCI that it had worked with SKA on the design of the Project, and so FCI justifiably relied on its representation that its proposal for the gear-reducers overhaul would comply with the Contract Documents.[46]  FCI maintains that its reliance on Philadelphia Gear's proposal resulted in FCI's damage.  Regarding its breach-of-contract claim, FCI explains that it issued a purchase order to Philadelphia Gear in reliance on the accuracy of Philadelphia Gear's proposal, which Philadelphia Gear had represented would comply with the Contract Documents.[47]  FCI asserts that "Philadelphia Gear breached its agreement to provide a right-angle gear that complied with the Project's plans and specifications, particularly in light of Philadelphia Gear's knowledge about the rotation of the Project's existing engines, the existing right-angle gears, and the proposed replacement engines."[48]  Because of Philadelphia Gear's breach, FCI argues, FCI may properly seek contractual indemnity against Philadelphia Gear.[49]  FCI adds that Philadelphia Gear's challenges to its contract claim are based on factual contentions and evidence not properly before

---

[43] *Id.* at 13-14.
[44] R. Doc. 392 at 7-8.
[45] *Id.* at 8-10.
[46] *Id.* at 10-11.
[47] *Id.* at 12-13.
[48] *Id.* at 13.
[49] *Id.*

the Court on a motion to dismiss.[50]  Finally, FCI requests, in the alternative, that it be granted leave to amend its third-party demand.[51]

In its opposition, SKA begins by echoing FCI's assertion that the pending motion is improperly brought as a Rule 12(b)(6) motion to dismiss since it relies on evidence outside the allegations of FCI's third-party demand; hence, SKA argues that the motion should be converted to a motion for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure.[52] SKA maintains that under a summary-judgment standard, genuine issues of material fact exist to preclude dismissal of FCI's claims against Philadelphia Gear.[53]  Specifically, SKA argues that (1) documents recently produced by Philadelphia Gear demonstrate that it "simply recycled to SKA a gear specification from a different project," though it represented to FCI and SKA that the plans and specifications it furnished for the Project would result in a complete, functioning system; and (2) the Contract Documents' specification for the gear reducers' backstop required that Philadelphia Gear know the rotation of the replacement engines, to ensure the engines would not turn in the wrong direction, yet Philadelphia Gear failed to properly design the backstop, in breach of its contractual obligations to FCI.[54]  SKA asserts that because of FCI's previous experience working with Philadelphia Gear, and Philadelphia Gear's expertise in gears, "FCI's reliance (and SKA's) on [Philadelphia Gear] was not misplaced or incorrect."[55]  SKA adds that if the Court does not convert the motion to a motion for summary judgment, then FCI's allegations are sufficient to properly state a claim for breach of contract against Philadelphia Gear, observing that Philadelphia

---

[50] *Id.* at 13-14.

[51] *Id.* at 14.

[52] R. Doc. 393 at 1-4.

[53] *Id.* at 5-9.  SKA states that if the Court converts the pending motion, then the Court should allow the parties an opportunity to address the motion with proper evidence.

[54] *Id.* at 6-9.

[55] *Id.* at 8-9.

Gear "cites no law to suggest FCI has not properly [pleaded] a breach of contract claim."[56]

In its reply to FCI, in addition to reiterating arguments previously made, Philadelphia Gear argues that the Court may consider documents it attached to its motion to dismiss because these documents are integral to the claim, and the "sum and substance of these documents has already been reviewed by this Court in its two prior Orders."[57]  Philadelphia Gear stresses that FCI's negligent misrepresentation and detrimental reliance claims should be dismissed for nearly the same reasons articulated by the Court in its December 17, 2019 Order & Reasons.[58]  And Philadelphia Gear argues that SKA's opposition is an attempt to have the Court reconsider arguments it previously rejected in its December 17, 2019 Order & Reasons.[59]

## III.    LAW & ANALYSIS

### A.    Rule 12(b)(6) Standard[60]

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

---

[56] *Id.* at 9.
[57] R. Doc. 402 at 4-5 (citing R. Docs. 300; 373).
[58] *Id.* at 6-8 (citing R. Doc. 373).
[59] R. Doc. 404 at 3-7 (citing R. Doc. 373).
[60] SKA argues that the Court should convert the pending motion to a motion for summary judgement.  *See* R. Doc. 393 at 1-4.  The Court has determined that it can resolve the pending motion under a Rule 12(b)(6) standard, without consideration of any potentially improper evidence.  Thus, there is no need to convert the motion to a motion for summary judgment.

of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*.  The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (internal quotation marks and citation omitted)).  Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).  Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B.    Analysis**

Under Rule 14 of the Federal Rules of Civil Procedure, a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).  A third-party plaintiff may not, however, implead a third-party defendant "merely because [the third-party defendant] may be liable to the

plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 368 n.3 (1978) (emphasis in original).  A third-party demand is improper when it "amounts to no more than a mere offer of a party to the plaintiff." *Smallwood ex rel. T.M. v. New Orleans City*, 2015 WL 5883802, at *5 (E.D. La. Oct. 8, 2015) (citing advisory committee's notes on 1946 amendment to Rule 14).  A third-party claim must be secondary or derivative of the main claim and "the original defendant must be able to demonstrate a basis for the third-party defendant's liability to the defendant (also known as the third-party plaintiff)." *USAA Gen. Indem. Co. v. Scott*, 2016 WL 8711678, at *2 (E.D. La. July 29, 2016) (quoting *McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849-50 (5th Cir. 1978)) (internal quotation marks omitted); *see also Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 316 F.R.D. 179, 182 (E.D. La. 2016) (citations omitted).

A third-party plaintiff must base its third-party claim on "indemnity, subrogation, contribution, express or implied warranty, or some other theory" of secondary or derivative liability.  *Martco Ltd. P'ship v. Bruks Inc.*, 430 F. App'x 332, 334 (5th Cir. 2011) (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1446, at 415-20 (3d ed. 2010)).  If a right to relief does not exist under the applicable substantive law, the third-party claim must be dismissed.  *Id.* at 335.  State substantive law determines whether the right to contribution or indemnity exists.  *Smallwood*, 2015 WL 5883802, at *4 (citing *Gen. Dynamics Corp. v. Adams*, 340 F.2d 271, 279 (5th Cir. 1965)).

### 1. Negligent misrepresentation

Philadelphia Gear argues that negligent misrepresentation sounds in tort, and so under the applicable comparative fault regime in Louisiana, nonintentional tortfeasors may only be held liable for their own share of fault.[61]  Therefore, says Philadelphia Gear, since it is not alleged to be

---

[61] R. Doc. 390-1 at 8-9.

an intentional tortfeasor, no solidary liability can exist between it and FCI, so FCI may not seek contribution from Philadelphia Gear for any liability FCI may have to the Parish. Philadelphia Gear also argues that FCI may not seek tort indemnity against it because this theory is only available to a party not actually at fault, yet if FCI is found liable to the Parish, that can only be because it is determined that FCI is actually at fault for failing to comply with the contract plans and specifications.[62] Accordingly, Philadelphia Gear argues, no theory of secondary or derivative liability, necessary for a third-party demand, exists for FCI's negligent misrepresentation claim.

FCI responds that it has properly asserted a negligent misrepresentation claim against Philadelphia Gear because Philadelphia Gear had knowledge regarding the rotation of the gear reducers and existing engines, this "superior knowledge imposed a duty upon Philadelphia Gear to supply accurate information to FCI," and "Philadelphia Gear breached that duty when [it] failed to alert anyone that the pumping system depicted in the drawings and specification it helped create would likely result" in the Rotational Conflict.[63] It adds that Philadelphia Gear also breached that duty when "its proposal to FCI did not include a reversal of the input shaft rotation" for the gear reducers.[64] FCI then asserts that Philadelphia Gear's arguments on tort indemnity are premature because they attempt to force FCI to prove that it has no liability as a prerequisite to its assertion of a negligent misrepresentation claim.[65]

Philadelphia Gear essentially repeats its arguments from its successful motion to dismiss SKA's third-party demand,[66] which are not exactly on point here. This is apparent from FCI's failure to address Philadelphia Gear's argument regarding comparative fault and the unavailability

---

[62] *Id.* at 9-11.
[63] R. Doc. 392 at 8-9.
[64] *Id.* at 9.
[65] *Id.*
[66] *See* R. Doc. 315-1 at 8-21.

of contribution – a primary point of contention in the earlier motion.  It is unnecessary to consider Louisiana's comparative fault regime on this motion because the Parish has not asserted a tort claim against FCI.[67]  Whether or not FCI has asserted an intentional tort claim against Philadelphia Gear (which it has not) is inapposite; "contribution is allowed only among *tortfeasors* who are solidarily liable."  *Hamway v. Braud*, 838 So. 2d 803, 807 (La. App. 2002) (citation omitted; emphasis added).  FCI is simply not alleged to be a tortfeasor.  Similarly, FCI may not seek tort indemnity from Philadelphia Gear where the only liability FCI faces arises from contract.  *See Shell W. Expl. & Prod., Inc. v. Falcon Drilling Co.*, 211 F.3d 126, 2000 WL 310144, at *1 (5th Cir. Mar. 10, 2000) ("[T]he district court correctly discerned that Storebrand was not entitled to tort indemnity recovery from Falcon where the only liability Storebrand faced arose from contract."); *Joiner v. Diamond M. Drilling Co.*, 688 F.2d 256, 261 (5th Cir. 1982) ("Under Louisiana law, 'indemnity shifts the entire loss from a *tortfeasor* only technically at fault to one primarily responsible for the act that caused the damage.'") (quoting *Green v. Taca Int'l Airlines*, 304 So. 2d 357, 359 (La. 1974)) (alterations omitted; emphasis added).  Moreover, even if the Parish had asserted a tort claim against FCI (which it has not), because negligent misrepresentation

---

[67] As stated previously, the Parish has asserted claims for breach of contract, bad faith breach of contract, and detrimental reliance against FCI.  Under Louisiana law, whether a bad faith breach of contract sounds in tort or contract depends on whether the duty breached is one owed to all persons or to only those having contractual rights.  *See Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 407 (5th Cir. 2000).  The Parish's claim for bad faith breach of contract sounds in contract because it rests on allegations that FCI breached obligations imposed by the FCI-Parish Contract.  *See* R. Doc. 369 at 170-71; *see also White v. State Farm Mut. Auto. Ins. Co.*, 479 F. App'x 556, 561 (5th Cir. 2012) ("We believe that the Louisiana Supreme Court would regard claims alleging breach of a contractual duty in bad faith as a species of breach-of-contract claim rather than one sounding in tort.").  Similarly, whether a detrimental reliance claim sounds in tort or contract "depends on the nature of the allegations (*i.e.*, whether the claim derives from an alleged breach of promise or breach of duty)." *Bluebonnet Hotel Ventures, L.L.C. v. Wachovia Bank, N.A.*, 2011 WL 13074300, at *4 (M.D. La. Sept. 28, 2011) (citing *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 487-88 (5th Cir. 2009)); *see also Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 479 (5th Cir. 2002) (explaining that nonfeasance in the performance of an obligation sounds in contract, whereas misfeasance in the performance of a contract for professional services, because of the special duty to employ ordinary skill and care in the exercise of certain professions, sounds in tort).  Because the Parish's detrimental reliance claim against FCI arises out of promises and representations FCI allegedly made to the Parish, it sounds in contract as well.  *See* R. Doc. 369 at 145-53.

is a nonintentional tort, it cannot serve as the basis for a contribution claim, and even if tort indemnity was available where the primary liability arises in contract (which it is not), because FCI cannot be found liable for breach of contract, bad faith breach of contract, or detrimental reliance, as alleged, unless it is actually at fault, FCI may not seek tort indemnity against Philadelphia Gear.[68]  Accordingly, FCI's negligent misrepresentation claim may not serve as the basis of a valid third-party claim against Philadelphia Gear.

### 2. Detrimental reliance

Philadelphia Gear asserts that FCI cannot satisfy the three requisite elements of a detrimental reliance claim.[69]  First, it argues that any representation it made to FCI during the bidding phase was necessarily gratuitous because Louisiana public bid law forbids the specification of a particular brand, make, or manufacturer for a product in a bid for a public works contract.  It adds that it made no misrepresentation by its silence concerning the rotational direction during the bidding phase because the particular replacement engine could not have been specified then, and hence the brand of engine ultimately selected could have had the opposite rotation, and furthermore, it fully disclosed the rotation of the existing gear reducers to FCI and SKA, and this information was incorporated into the Contract Documents.  Next it argues that any reliance by FCI was not justified because it never represented that it was an expert in diesel engines and the responsibility for the design of the Project was SKA's as engineer.  Finally, Philadelphia Gear asserts that FCI cannot show it relied on Philadelphia Gear's silence concerning the replacement engine because FCI had already ordered the engines when it advised Philadelphia Gear of the

---

[68] *See* R. Doc. 373 at 15-17; R. Doc. 409 at 5-6 (explaining that the Court determined that SKA could not maintain a tort indemnity claim against Philadelphia Gear by examining "the *nature* of that party's *alleged fault* to determine if a *theoretical basis* for indemnity exists") (citation omitted; emphasis in original).  Thus, the Court has now twice rejected in this litigation FCI's argument that the Court cannot address the availability of tort indemnity without first assessing its liability.  *See* R. Doc. 373 at 16-17.

[69] R. Doc. 390-1 at 11-13.

selection.

FCI responds that it has properly pleaded a detrimental reliance claim against Philadelphia Gear.[70]  FCI asserts that Philadelphia Gear informed FCI about the Project and indicated that it had worked with SKA on the design of the Project, leading FCI to request that Philadelphia Gear provide it with a proposal for the scope of work for the overhaul of the right angle gear reducers. FCI argues that because of Philadelphia Gear's involvement in the design phase of the Project, it justifiably relied on Philadelphia Gear's representation that its proposal for the gear-reducers overhaul would comply with the Contract Documents.  FCI maintains that public bid law does not prevent Philadelphia Gear from providing information about the engine used to draft the Project's specifications, and that Philadelphia Gear knew the rotational direction of the existing gear reducers and the Project's engines prior to FCI's request for a proposal.  It concludes that Philadelphia Gear is seeking to impose the wrong standard at this stage by arguing that "FCI has not demonstrated that it relied upon Philadelphia Gear's silence."[71]

> In Louisiana:
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. … Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code. art. 1967.  A party seeking to establish detrimental reliance must prove three elements: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance."  *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005) (citations omitted).  The focus of this analysis is "whether a representation was made in such a manner that the promisor should have expected the promise to

---

[70] R. Doc. 392 at 10-11.
[71] *Id.* at 12.

rely upon it, and whether the promisee so relies to his detriment." *Id.* The doctrine is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Id.* (citations omitted). Furthermore, as a form of estoppel,[72] to maintain a detrimental reliance claim, it is "essential that [the claimant] should not only have been destitute of knowledge of the real facts as to the subject matter of the controversy but should have also been without convenient or ready means of acquiring such knowledge." *Shirey v. Campbell*, 151 So. 2d 557, 562 (La. App. 1963); *see also Luther v. IOM Co. LLC*, 130 So. 3d 817, 826 (La. 2013) ("[A] party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel.") (citation omitted). Detrimental reliance claims are "not favored in Louisiana" and "must be examined carefully and strictly." *In re Ark-La-Tex Timber, Co.*, 482 F.3d 319, 334 (5th Cir. 2007) (citations omitted).

First, FCI alleges that it relied on Philadelphia Gear's representation "that Philadelphia Gear's proposal for the right angle gear scope of work would comply with the requirements of the Contract Documents, in deciding to incorporate Philadelphia Gear's quote for the right angle gear scope of work into FCI's bid for the Project ... [and] in deciding to issue a purchase order to Philadelphia Gear" to perform said work.[73] As discussed below,[74] FCI fails to allege how Philadelphia Gear's proposal (or its ultimate work product) did not comply with the requirements of the Contract Documents; indeed, even under FCI's own allegations, it is clear that the proposal *did* comply with said requirements. Nor does FCI explain in its allegations how its reliance on Philadelphia Gear's accurate representation was to its detriment.

---

[72] *See Miller v. Lowe*, 2009 WL 4730201, at *3 (W.D. La. 2009) (explaining that, in Louisiana, the elements for detrimental reliance and promissory or equitable estoppel are the same and based on the same civil code provision) (citations omitted).

[73] R. Doc. 364 at 15-16.

[74] *See infra* section III.B.3.

It appears, then, that FCI seeks to imply that Philadelphia Gear assured FCI that its proposal would lead to a fully-functioning pumping system. Such an allegation is absent from the third-party demand, but even if it had been alleged, FCI's detrimental reliance claim would still fail. Had Philadelphia Gear made such an assurance, it would not have been a misrepresentation: the proposal would have indeed led to a fully-functioning pumping system, *if* the replacement engines maintained the existing engines' rotation. That Philadelphia Gear did not tell FCI that if FCI opted to select for the Project an engine with the opposite rotation (*e.g.*, the Caterpillar 3152C (HD) land mechanical engine), rather than one with the existing rotation, reversal of the gear reducers' rotation would also need to be specified in the proposed scope of work, does not alone raise a viable detrimental reliance claim. *See Shirey*, 151 So. 2d at 561 ("Mere silence of itself will not raise an estoppel. To make the silence of the party operate as an estoppel the circumstances must have been such as to render it his duty to speak, and there must also be an opportunity to speak."). The Court has already determined as a matter of law that the Contract Documents incorporated information "to apprise the contracting parties, including FCI, about the 'Existing Pump Data,'"[75] so FCI had available to it the same information available to Philadelphia Gear concerning the engines and the gear reducers. But even under FCI's own allegations, it is clear that FCI had the "means readily and conveniently available to determine" that the existing gear reducers' rotation was incompatible with the rotational direction of the Caterpillar 3152C (HD) land mechanical engines. *See Luther*, 130 So. 3d at 826. FCI alleges that "SKA failed to check the drawings, specifications and budget proposals furnished by Louisiana Machinery [the engine vendor] and Philadelphia Gear to confirm that the designs for these two critical components of the Project would be compatible with each other," and that neither SKA nor Philadelphia Gear informed or

---

[75] R. Doc. 300 at 22.

alerted each other that "the pumping system depicted in the drawings and specifications resulted in" the Rotational Conflict.[76]  FCI alleges that these same drawings and specifications were incorporated into the Contract Documents.[77]  In other words, FCI alleges that the same documents which should have apprised SKA and Philadelphia Gear of the possibility of the Rotational Conflict were available to it.  As a result, FCI's reliance upon any alleged representation by Philadelphia Gear cannot have been reasonable.  *See Caplan v. Ochsner Clinic, L.L.C.*, 799 F. Supp. 2d 648, 653 (E.D. La. 2011) (any inconsistency between alleged representation and the unambiguous terms of a contract make reliance unreasonable as a matter of law) (citing *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 405 (5th Cir. 2004)).

Accordingly, FCI has failed to state a claim for detrimental reliance.

### 3.  Breach of contract

Philadelphia Gear argues that FCI's contract claim is deficient in that it "does not specify in what manner the refurbished right angle gear fails to meet the [C]ontract [D]ocuments."[78]  It emphasizes that the Court previously concluded that the FCI-Parish Contract placed the "task of ensuring compatibility between the engine and gear reducers" on FCI, the contractor.[79]  Philadelphia Gear also points to letters, which it attaches as exhibits, from FCI to SKA on January 3, 2018, and February 28, 2018, in which FCI "admitted" that the Contract Documents did not require reversing the rotational direction of the gear reducers.[80]

FCI responds by explaining that it issued a purchase order to Philadelphia Gear to perform

---

[76] R. Doc. 364 at 11-12.
[77] *Id.* at 12.  The Parish's allegations against FCI also state that the plans and specifications in the Contract Documents, specifically Appendix 1 ("Existing Pump Data"), which the Parish incorporates into its pleading in part, provided the rotational direction of the existing equipment.  *See* R. Doc. 369 at 50-55.
[78] R. Doc. 390-1 at 14.
[79] *Id.*
[80] *Id.* at 14-15.

the gear-reducer overhaul in reliance on the "accuracy of the proposal Philadelphia Gear provided," which Philadelphia Gear had represented "complied with the Project's drawings and specifications to provide a working replacement pump system."[81]   FCI argues that because Louisiana recognizes contractual indemnity, it may seek indemnity from Philadelphia Gear if FCI has to answer for any liability which "is the result of Philadelphia Gear's breach of contract."[82] FCI contends that Philadelphia Gear's arguments consist of factual contentions based on evidence not properly considered under Rule 12(b)(6), and that it is "FCI's burden to prove the existence of a contract, as well as its breach.  At trial."[83]   Finally, FCI asserts that "[b]ecause of Philadelphia Gear's closeness to the Project's design, it had an obligation – contractual or otherwise – to provide FCI with a workable product that could satisfy the Project's objective: functioning pump systems," which it did not do.[84]

"Under Louisiana law, the 'essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.'" *Express Lien, Inc. v. Handle, Inc.*, 2020 WL 1030847, at *6 (E.D. La. Mar. 3, 2020) (quoting *Denham Homes, L.L.C. v. Teche Fed. Bank*, 182 So. 3d 108, 119 (La. App. 2015)).

FCI's third-party demand identifies a single contract between FCI and Philadelphia Gear: the purchase order to perform the gear-reducer overhaul.[85]   FCI alleges that the work it requested in the purchase order was that "described in Philadelphia Gear's proposal to FCI" and that Philadelphia Gear had represented that this proposal would comply with the requirements of the

---

[81] R. Doc. 392 at 12-13.
[82] *Id.* at 13.
[83] *Id.* at 13-14.
[84] *Id.* at 14.
[85] *See* R. Doc. 364 at 16.

Contract Documents.[86]   However, FCI's factual allegations do not state that this alleged representation was incorporated into the purchase order agreement, or that Philadelphia Gear otherwise undertook it as an obligation to FCI.  Still, FCI then claims breach of contract based on "Philadelphia Gear breach[ing] its agreement with FCI by furnishing FCI with a design for a right angle gear, and by furnishing FCI with a right angle gear, which failed to comply with the requirements of the Contract Documents."[87]

Assuming, however doubtful, that FCI properly alleges that Philadelphia Gear undertook an obligation to provide a design and product that would comply with the requirements of the Contract Documents, FCI still fails to identify *how* Philadelphia Gear breached that obligation. FCI's current characterization of its allegations highlights this deficiency.  FCI now paints Philadelphia Gear as having represented that the proposal would comply with the "drawings and specifications *to provide a working replacement pump system*,"[88] but the allegation it cites contains no reference to a representation on the part of Philadelphia Gear to provide a working replacement pump system.[89]  Even more glaring is FCI's assertion that Philadelphia Gear "had an obligation – contractual *or otherwise* – to provide FCI with a workable product that could satisfy the Project's objective: functioning pump systems."[90]  These attempts to recharacterize the obligation allegedly undertaken by Philadelphia Gear demonstrate FCI's problem: that Philadelphia Gear did not breach any obligation allegedly owed to FCI because Philadelphia Gear provided a design for the gear-reducer overhaul and refurbished gear reducers that complied with the Contract Documents, notwithstanding the conclusory allegation to the contrary in FCI's third-party demand.  This is

---

[86] *See id.* at 15-16.

[87] *Id.* at 20.

[88] R. Doc. 392 at 12 (citing R. Doc. 364, ¶67) (emphasis added).

[89] *Compare id. with* R. Doc. 364, ¶67 ("Philadelphia Gear represented to FCI, and to each of the bidders on the Project, that Philadelphia Gear's proposal for the right angle gear scope of work met the requirements of the Contract Documents.").

[90] R. Doc. 392 at 14 (emphasis added).

plain from an examination of the factual allegations in the demand.

According to FCI's allegations, the scope of work for the gear-reducer overhaul incorporated into the Contract Documents "did not include a reversal of the rotation direction for the input shaft of the right angle gear."[91]  FCI also alleges that Philadelphia Gear's proposal to FCI "did not include a reversal of the rotation direction for the input shaft of the right angle gear."[92]  Therefore, as alleged, Philadelphia Gear's proposal did not stray from the scope of work specified for the overhaul in the Contract Documents.  That Philadelphia Gear's proposal for the gear-reducer overhaul did not guarantee ***compatibility*** with the Caterpillar 3152C (HD) land mechanical engine does not mean it was not in ***compliance*** with the Contract Documents.  And, more to the present point, FCI fails to allege ***how*** it wasn't, and hence, ***how*** Philadelphia Gear breached any alleged obligation it owed to FCI under the purchase order.

Finally, FCI's argument that the burden is upon it "to prove the existence of a contract, as well as its breach," at trial,[93] and SKA's related argument that FCI's allegations are sufficient for the pleading stage,[94] are to no avail.  A party must sufficiently plead the essential elements of a breach-of-contract claim to survive a motion to dismiss.  FCI has not properly alleged that Philadelphia Gear failed to perform its alleged obligation to FCI.

Therefore, FCI has failed to state a breach-of-contract claim against Philadelphia Gear.

In sum, none of FCI's claims against Philadelphia Gear may properly serve as the basis of a third-party demand, and so FCI has failed to bring a valid third-party demand against Philadelphia Gear.

---

[91] R. Doc. 364 at 12.
[92] *See id.* at 14.
[93] R. Doc. 392 at 14.
[94] *See* R. Doc. 393 at 9.

### 4.  Amendment

FCI requests that it be permitted to amend its third-party demand should the Court determine that its current allegations are not sufficient.[95]  FCI does not propose any amendments for the Court to consider.  Regardless, the Court finds that because no amendment would cure the noted deficiencies in its third-party demand, or assert a valid theory of derivative liability on the part of the proposed third-party defendant, any amendment would be futile.  *See, e.g., Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F. 2d 314 (5th Cir. 1991) (amendments futile when mineral lease unambiguously precluded asserted theory of liability); *Verhein v. South Bend Lathe, Inc.*, 598 F. 2d 1061 (7th Cir. 1979) (leave properly denied where proposed amendment failed to allege facts supporting valid theory of products liability).

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Philadelphia Gear's motion to dismiss (R. Doc. 390) is GRANTED.

New Orleans, Louisiana, this 24th day of April, 2020.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[95] R. Doc. 392 at 14.