UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FUCICH CONTRACTING, INC. | CIVIL ACTION |
| VERSUS | NO. 18-2885 |
| SHREAD-KUYRKENDALL AND ASSOCIATES, INC., *et al.* | SECTION M (4) |

## ORDER & REASONS

Before the Court is a motion to bifurcate pursuant to Federal Rule of Civil Procedure 42(b) filed by Fucich Contracting, Inc. ("FCI") and Clayton and Kathleen Fucich (the "Fuciches," and together with FCI, the "Movants").[1]  Movants seek to bifurcate all claims between them and Travelers Casualty and Surety Company of America ("Travelers") from all other claims in this case.[2]  Shread-Kuyrkendall and Associates, Inc. and XL Specialty Insurance Company (collectively, "SKA")[3] and Travelers[4] oppose the motion.  Movants reply in further support of their motion to bifurcate.[5]  Having considered the parties' memoranda, the record, and the applicable law, the motion to bifurcate is denied.

**I.  BACKGROUND**

This case arises out of a construction dispute over a component compatibility problem, specifically, a rotational conflict, between the engines and gear reducers intended for use in back-up storm water drainage pumps critical to a public works improvement project known as the Lake Borgne Basin Levee District Pump Station #1 & #4 Pump Upgrade (the "Project").[6]

---

[1] R. Doc. 423.
[2] *Id.*
[3] R. Doc. 424.
[4] R. Doc. 425.
[5] R. Doc. 428.
[6] R. Doc. 373 at 1-4.

The St. Bernard Parish Government ("SBPG") hired FCI as the Project contractor and SKA as the Project engineer. Pursuant to the Louisiana Public Works Act, Travelers issued a performance and payment surety bond naming FCI as principal and SBPG as obligee.[7] In connection with this bond, FCI and the Fuciches executed a general agreement of indemnity ("GAI") in favor of Travelers, agreeing to indemnify Travelers from loss and to deposit collateral if needed to compensate for any loss or anticipated loss.[8]

When the rotational conflict became apparent, SBPG informed Travelers that it intended to terminate FCI.[9] FCI filed this lawsuit against SBPG and SKA, and SBPG did, in fact, terminate FCI several months later.[10] SBPG filed a counterclaim and third-party demand seeking to hold FCI and SKA responsible for the rotational conflict and resulting failure to complete the Project. Travelers completed an independent investigation in which it concluded that the rotational conflict was caused by SKA.[11] As a result, Travelers found FCI did not have a duty to finish the Project.[12] Since FCI, as Traveler's principal, did not (in its opinion) have a duty to finish the Project, Travelers, as surety, refused to complete the Project.[13] SBPG then added Travelers to the lawsuit.[14]

Given the claims against FCI, Travelers sought to have Movants provide it with collateral security. Pursuant to the collateral and indemnity provision in the GAI, this Court ordered Movants to provide Travelers with $2,563,930.00 as collateral security.[15] Thereafter, FCI filed a claim against Travelers for bad faith breach of the GAI.[16]

---

[7] R. Docs. 423-1 at 2; 425 at 2.
[8] R. Doc. 425 at 2.
[9] R. Docs. 423-1 at 3-4; 425 at 2.
[10] R. Docs. 423-1 at 3; 425 at 2.
[11] R. Docs. 423-1 at 3; 425 at 2.
[12] R. Docs. 423-1 at 3; 425 at 2.
[13] R. Docs. 423-1 at 3; 425 at 2.
[14] R. Docs. 423-1 at 3-4; 425 at 2.
[15] R. Docs 184; 224.
[16] R. Docs. 423-1 at 5; 425 at 3.

## II. PENDING MOTION

Movants urge that bifurcation will prevent the Court from "trying two cases within one."[17] They assert that all claims between them and Travelers depend upon the interpretation of the GAI.[18] If they are not found liable in the underlying Project dispute, Movants assert that the GAI will become irrelevant and a second trial would be unnecessary.[19] Movants argue that bifurcation would expedite settlement as both they and Travelers would have a better understanding of where they stood once the first trial was completed.[20] Movants are also concerned about the Fuciches' personal financial information being shared in discovery unnecessarily.[21]

In opposition, SKA argues that the claims between all the parties are "deeply intertwined."[22] Specifically, it asserts that Travelers, SKA, and SBPG all maintain that FCI acted in bad faith when it learned of the rotational conflict[23] and that FCI has alleged claims against each of them.[24] SKA further argues that witnesses and exhibits will be duplicated if there are two trials and Movants' financial information is material to SKA's claims and defenses.[25]

In its opposition, Travelers raises the additional argument that there are more measured steps that can be taken to address Movants' concerns about the privacy of financial information.[26] Travelers also argues that a single bench trial eliminates any risk of either confusion on the issues[27] or multiple appeals.[28]

---

[17] R. Doc. 423 at 1.
[18] R. Doc. 423-1 at 7.
[19] *Id.* at 8.
[20] *Id.*
[21] *Id.* at 7-8.
[22] R. Doc. 424 at 1.
[23] *Id.* at 7.
[24] *Id.* at 11.
[25] *Id.*
[26] R. Doc. 425 at 4.
[27] *Id.*
[28] *Id.* at 1.

3

### III.   LAW & ANALYSIS

#### A. Legal Standard

Bifurcation is a procedural device used to split a trial into distinct and separate claims. As explained in Rule 42(b) of the Federal Rules of Civil Procedure: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The decision whether to bifurcate a trial is "within the sole discretion" of the district court. *First Tex. Savs. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992). The motion should not be granted lightly. "There is an important limitation on ordering a separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)). "The party moving for bifurcation has the burden to demonstrate that judicial economy would be promoted and that the non-moving party will not suffer prejudice." *Wesco Ins. Co. v. Tauler Smith LLP*, 2020 WL 4369496, at *1 (C.D. Cal. Mar. 10, 2020). S*ee also Meador v. Starr Indem. & Liab. Ins. Co.*, 2020 WL 1332952, at *3-4 (E.D. La. Mar. 23, 2020) (denying motion to bifurcate when movant failed to carry its burden of proving "an exceptional case warranting bifurcation"); *Colo. Prop. Investors, Inc. v. HCNO Servs., Inc.*, 1998 WL 892669, at *1 (E.D. La. Dec. 18, 1998) (denying motion to bifurcate because movant did not carry its burden).

#### B. Analysis

##### 1.   **Bifurcation Would Not Promote Rule 42(b)'s Goal of Avoiding Prejudice.**

Bifurcation, which is used in complex trials to avoid jury confusion, is not warranted here. Since the case at bar is a bench trial, any worries of prejudice from confusing the factfinder are mitigated by the role of the judge. "The Court's ability to understand the relevance and

application of [the] issues [to be tried] alleviates the threat of potential confusion and prejudice." *Tidewater Marine, Inc. v. Sanco Int'l, Inc.*, 1998 WL 131738, at *6 (E.D. La. Mar. 20, 1998) (denying motion to bifurcate issues in bench trial).  *See also Pfeister v. RSUI Indem. Co.*, 2020 WL 4667425, at *2 (N.D. Cal. Aug. 5, 2020) (denying motion to bifurcate because a bench trial reduces, if not eliminates, any risk of confusion); *Merrill v. Pathway Leasing LLC*, 2018 WL 10900595, at *1 (D. Colo. May 30, 2018) (same); *Coshocton Grain Co. v. Caldwell-Baker Co.*, 2016 WL 11469770, at *3 (D. Kan. July 18, 2016) (same); *Williams v. Treasure Chest Casino, L.C.C.*, 1998 WL 42586, at *10 (E.D. La. Feb. 3, 1998) (same).

The interpretation of the GAI is not so complex an issue – either as a factual or legal matter – as would warrant bifurcating it from the underlying claims arising from the dispute over the rotational conflict, especially since the issue will be presented to the judge, not a jury. The Court is confident that hearing these claims together is more likely to shed light than cause confusion. Similarly, bifurcation is not the appropriate procedural device to alleviate Movants' concerns about sensitive financial information. As Travelers observes, there are procedures already in place in the case that can be used to protect this information if necessary. *Cf. Contogouris v. WestPac Res.*, 2011 WL 5419735, at *4 (E.D. La. Nov. 9, 2011) (denying bifurcation of discovery to protect against disclosure of financial information that could be protected by entry of a confidentiality order).

Moreover, bifurcation here would unduly prejudice the parties who will face significant delay in resolving the entirety of their dispute. "This Court fully embraces the time-honored premise that 'an unreasonable delay in a case's resolution amounts to prejudice to the one opposing separation. Such delay is clearly not in the public interest.'" *Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995) (quoting *Laitram v. Hewlett-Packard Co.*, 791 F. Supp. 113, 116 (E.D. La. 1992)) (original brackets omitted). The bifurcation of trials requested by Movants

would cause significant and unnecessary delay. *See Tidewater Marine, Inc.*, 1998 WL 131738, at *6.

### 2. Bifurcation Would Not Advance Rule 42(b)'s Goals of Convenience and Economy.

Movants argue that bifurcation will promote judicial economy because they and Travelers are the only parties to the GAI, and their dispute does not implicate SBPG or SKA.[29] They argue that resolution of the claims involving the GAI depend upon the outcome of the claims concerning the Project.[30] Therefore, they assert bifurcation is appropriate because it will potentially eliminate the need for further litigation against Travelers.[31] Even if true, this outcome is contingent on a variety of factors and this potential result is not enough to merit bifurcation when weighing all the interests at play in this case. *See Tidewater Marine, Inc.*, 1998 WL 131738, at *6 (denying bifurcation even though business organization issues were only relevant if there was a finding of underlying liability); *Williams*, 1998 WL 42586, at *10 (denying bifurcation even though the insurance coverage issue depended on a finding of liability on the underlying issues). To be sure, because the factual issues to be resolved in connection with the claims concerning the rotational conflict and the Project bear directly on the issues to be resolved in connection with the claims concerning the GAI, there is an overlap in the proof that could potentially create unnecessary duplication of evidence and require witnesses to travel to two trials. In this way, inconvenience and increased costs to the parties, as opposed to judicial economy, are just as likely to result from bifurcation.

---

[29] R. Doc. 423-1 at 7.
[30] *Id.*
[31] *Id.*

*   *   *   *

In short, since bifurcation in this case would not advance the Rule 42(b) goals of increasing convenience, avoiding prejudice, or expediting or economizing the litigation, it is not the kind of "exceptional case" that warrants bifurcation. *Meador*, 2020 WL 1332952, at *3-4.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of FCI and the Fuciches to bifurcate (R. Doc. 423) is DENIED.

New Orleans, Louisiana, this 2nd day of September, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE