MINUTE ENTRY
ROBY, M.J.
10/14/2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FUCICH CONTRACTING, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-2885** |
| **SHREAD-KUYRKENDALL & ASSOCIATES, INC.** | **SECTION: "M" (4)** |

LAW CLERK:         Destinee Andrews
COURT REPORTER:    Cathy Pepper

Appearances:    **Steven Michael Lozes** for Timken Gears and Services, Inc. d/b/a Philadelphia Gear.
**Albert D. Clary** for Shread-Kuyrkendall & Associates, Inc.

## MINUTE ENTRY AND ORDER

Before the Court is **Philadelphia Gear's Motion to Quash Notice of Video Deposition of Glen Olivi (R. Doc. 447)** filed by Third-Party Timken Gears & Services Inc., d/b/a Philadelphia Gear ("Philadelphia Gear") seeking an order quashing the video deposition of one of its engineers, Glen Olivi, unilaterally scheduled by Shread-Kuyrkendall and Associates, Inc. ("SKA") to take place on October 20, 2020 at 10:00 a.m. The motion is opposed. R. Doc. 462. The motion was heard via videoconference on October 14, 2020.

I.     Background

On March 19, 2018, Plaintiff Fucich Contracting, Inc. ("FCI") filed this action in diversity in the District Court against SBPG, the Lake Borgne Basin Levee District ("LBBLD"), and Shread-Kuyrkendall and Associates, Inc. ("SKA") seeking declaratory relief and monetary damages arising from a contractual dispute. R. Doc. 1. The contract in dispute involved the improvement and installation of four new diesel engines at existing Pump Stations in the St.

MJSTAR: 00:33

Bernard Parish (the "Project"). A main question in this suit is who is responsible for the decision to order the engine, which could not be used, Fucich, the contractor, or the engineer, SKA.

The central issue of this dispute is the rotational conflict, which involves the purchase and corresponding Project engineering design of "Caterpillar 3512 C Diesel Engines." R. Doc. 244. Essentially, the new engines rotated in the opposite direction of the existing engines, which rendered the new engines' alignment to the refurbished gearboxes not possible and effectively prevented the installation of the new engines, halting the project in its entirety. R. Doc. 302-2, p. 85, ¶¶ 337-338. As a result of the rotational conflict, SBPG's ability to operate its pumping system at full capacity has been hindered during multiple Hurricane Seasons, since 2017, and the Project remains incomplete

FCI and SKA eventually sought to bring third-party claims against Philadelphia Gear. *See* R. Docs. 189, 364. Philadelphia Gear (operating under the name Western Gear) manufactured the pumps' original right-angle gear reducers, which were manufactured, purchased, and installed in approximately 1968, and which rotate counterclockwise. *Id.* In connection with FCI's bid and contract, a written agreement between FCI and Philadelphia Gear was executed for Philadelphia Gear to recondition or refurbish two of the four old right-angle gears and those gears were delivered to the pump stations for use on the Project. The factory overhaul requested by FCI maintained the existing counterclockwise rotation. SKA alleged that Philadelphia Gear knew, or should have known, the Caterpillar engines to which the gear reducers would be connected turned in the opposite direction. SKA, thus, attempted to assert product liability and detrimental reliance claims against Philadelphia Gear. FCI also attempted to assert claims of negligent misrepresentation, detrimental reliance, and breach of contract against Philadelphia Gear.

On December 17, 2019, the District Judge issued an Order and Reasons dismissing SKA's third-party claims against Philadelphia Gear. R. Doc. 373. On April 24, 2020, the Court over this matter issued an Order and Reasons dismissing FCI's third-party claims against Philadelphia Gear. R. Doc. 416.  Notwithstanding these opinions, which, taken together, dispose entirely of Philadelphia Gear as a party in this litigation, the Court denied Philadelphia Gear's motion for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) in this case noting the policy against piecemeal appeals. R. Doc. 422.

On August 31, 2020, Gayle Quinlan, Philadelphia Gear sale representative, was deposed as the most knowledgeable person about the Project but was not knowledgeable about the engines' design. R. Doc. 447-1, p. 4. Notwithstanding this deposition, SKA now seeks to depose Glen Olivi, an engineer employed by Philadelphia Gear, which Philadelphia Gear contends is moot and not relevant to the matter before the Court because of the dismissal order. R. Doc. 447-1, p. 4-5.

In opposition, SKA contends that the deposition testimony of Glen Olivi is relevant and necessary where the Court has ruled that it can present evidence of Philadelphia Gear's fault and include a blank on the verdict for Philadelphia Gear's fault. *See* R. Doc. 462, p. 1. SKA also contends that Olivi's testimony is relevant to the issue of remediation of the engine-gear rotational conflict. R. Doc. 462, p. 2.

**II.     Standard of Review**

Federal Rule of Civil Procedure ("Rule") 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

3

In addition, "[b]oth Rules 45 and 26 authorize the court to modify a subpoena *duces tecum* when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016) (Wilkinson, C.M.J.). Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . ." Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1).

### III.   Analysis

Philadelphia Gear contends the proposed deposition of Glen Olivi is SKA's futile search for someone to blame for its own failures on this Project and lists topics of inquiry that are unrelated to the rotation compatibility issues at the heart of this lawsuit. R. Doc. 447-1, p. 11.

SKA lists seven topics of inquiry for Olivi's proposed deposition:

1) engineering of the right-angle gears – both for the original project in for reversal of the gear;

      2) knowledge of standard rotation;
      3) design of the right-angle gears – which have never been produced;
      4) the backstop – design and construction;
      5) providing the draft specification and use of the final construction specifications;
      6) determination of the correct rotation for these right-angle gears; and
      7) The Job Traveler.

R. Doc. 447-4.

      Philadelphia Gear contends that it is undisputed that SKA had knowledge that the old engines rotated in a nonstandard manner as opposed to the new engines which rotated counterclockwise which is SAE standard rotation. R. Doc. 447-1, p. 5-6. As such, Philadelphia Gear contends no amount of testimony given by Glen Olivi could relieve SKA of its own responsibilities as design engineer. R. Doc. 447-1, p. 6.

      Specifically, considering Topics 1-3, Philadelphia Gear argues that the District Judge has already determined that the gear specifications within the Contract Documents did not call for a rotation reversal of the existing gear box. *Id.* In addition, Philadelphia Gear argues that an examination into the design of the right-angle gear will not shed any light on the engine rotational conflict, which is the true issue of dispute in this litigation. *Id.* Finally, Philadelphia Gear argues that it is undisputed that it the gears were upgraded with the gear specification contained in the contract, and its only task was to upgrade the right-angle gears to conform to the gearbox specifications. *Id.* As such, Philadelphia Gear maintains that inquiry into the SAE standard rotation for land diesel engines is not relevant because Philadelphia Gear made no representation that it would provide a working pump replacement system. *Id.*

      In addition, Philadelphia Gear argues that Topic 4 is not relevant because the backstop is completely unrelated to the engine. R. Doc. 447-1, p. 8. A backstop is a mechanical brake designed to prevent the gear box from rotating backwards. *Id.* Philadelphia Gear contends that the backstop

it designed was in accordance with the existing rotation of the gear box, and the gear box specifications did not call for any change in rotation. *Id.* As such, Philadelphia Gear contends that an inquiry related to this topic will not show that Philadelphia Gear was aware, or should have been aware, of the rotation of the gear box when adding a backstop of the existing gear box is speculative and misplaced. *Id.*

Next, with respect of Topics 5, Philadelphia Gear contends that the Court already determined any reliance by SKA on the sample specifications provided by Philadelphia Gear was not justified where SKA and its world-class team of engineers were ultimately responsible for the design of the project. *Id.* (citing R. Doc. 373, p. 19).

Finally, considering Topics 6 and 7, Philadelphia Gear contends Philadelphia Gear contends these topics have been discussed *ad nauseum* in prior discovery. R. Doc. 447-1, p. 9-10. With respect of Topic 6, Philadelphia Gear contends SKA obtained schematic drawings of the existing gears which clearly showed the gear rotation, and SKA incorporated these drawings in Appendix 1. *Id.* With respect to Topic 7, Philadelphia Gear contends "Job Traveler" is essentially the job paperwork carried along a particular work order's lifespan and refers to this material as the internal job file, which contains manufacturing specifications, vendor/supplier information, and drawings necessary to upgrade the right angle gear to conform to the new gear specifications. R. Doc 447-1, p. 10. Notwithstanding, Philadelphia Gear has already produced all documents in its possession, including confidential, proprietary and trade secret documents pursuant to the Protective Order entered by this Court, and has produced the witness most knowledgeable about this Project for deposition. *Id.* As such, Philadelphia Gear maintains that there is no information Mr. Olivi could provide that would lead to any relevant evidence. *Id.*

SKA, in opposition, does not analyze the relevance of each topic of inquiry in its brief but generally contends the fault of Philadelphia Gear is found in both the design of the gears and in the construction of the gears. R. Doc. 462, p. 5. SKA, therefore, contends Mr. Olivi's deposition testimony is necessary for the defense and proper apportionment of fault in this case. R. Doc. 462, p. 4.

In addition, SKA argues that Mr. Olivi's testimony is relevant to the determination of the scope and cost of the previous and ongoing remediation of the rotational conflict. R. Doc. 462, p. 6. Specifically, SKA contends the testimony Mr. Olivi can explain how Philadelphia Gear changed the rotation of the gears to allow the project to go forward after discovery of the engine/gear rotation conflict and that the engineering change was performed no later than January 2018. This testimony will show the answer to the rotational conflict has been known now for almost three (3) years. *Id.* As such, SKA contends that this testimony can be used to show FCI failed to properly coordinate the engine with the gear, avoided the rotational conflict entirely, and/or perhaps mitigated the damages in this case. *Id.*

Although these seven topics were addressed in the briefing of the motion, at the hearing the motion was distilled into three topics of dispute. In considering the various contentions, the Court takes this motion in three parts: 1) the fault of Philadelphia Gear, 2) the liability of Fucich, and 3) damages and the remediation of the Project.

Turning first to the topics pertaining to the fault of Philadelphia Gear, this Court finds the District Judge's order dismissing SKA's claims against Philadelphia Gear in this case instructive. *See* R. Doc. 373. Among other things, Judge Ashe states "[i]f, for example, SKA is found negligent for incorporating deficient specifications into the contract documents, that Philadelphia Gear provided those specifications cannot mean SKA was not actually negligent in incorporating

7

deficient specifications into the contract documents for which it was responsible as the Project engineer." *Id.* at p. 17. As a matter of law, the Court determined that Philadelphia Gear had no duty to raise the proverbial red flag concerning the gear rotation in its design because public bid law prevented it from dictating the rotation given that the brand of engine selected could have called for a different rotation. *Id.* at p. 19. As such, Judge Ashe likewise determined "even if Philadelphia Gear 'is an expert in these highly specialized gears' and 'represents it has a world-class engineering team,' SKA and its engineers were ultimately responsible for the design of the Project." *Id.* at p. 19.

Considering the opinion on this subject matter, the Court has determined as a matter of law that the incorporation of Philadelphia Gear's deficient specs in the contract documents does not absolve the fault of the engineer, SKA, in this matter. As such, based on Judge Ashe's rulings, the topics related to the fault of Philadelphia Gear are simply not relevant to this matter. As such, the Court grants Philadelphia Gear's motion to quash with regard to topics related to the fault of Philadelphia Gear.

Considering next the liability of Fucich, while it is undisputed that Fucich failed to read Appendix 1 to the Contract Documents, which showed that the old German engines rotated in the opposite direction as the newer American Caterpillar engines, SKA seeks to question Olivi as to the incorporation of the engine's rotational direction in other documents, such as the submittals.

Here, the Court is of the opinion that SKA is entitled to question Olivi as to this matter where it is probative of Fucich's and FCI's attentiveness to the project. As such, Philadelphia Gear's motion to quash is denied with respect to topics relating to the liability of Fucich.

Finally, the Court considers damages and the remediation of the project. SKA contends that these topics are intended to show that the solution to the rotational conflict has been known for years. The topics also are intended to show the work needed to fix the gear conflict.

As to this topic, the Court is of the opinion that the process and monetary figure related to fixing the gears, even if just a scope as opposed to a precise dollar amount, is a relevant to the potential cost-savings on the Project. Therefore, SKA is entitled to ask Olivi questions on this topic. As such, the Court denies Philadelphia Gear's motion to quash with respect to those topics related to the damages and remediation of the Project.

IV. **Conclusion**

Accordingly,

**IT IS ORDERED** that **Philadelphia Gear's Motion to Quash Notice of Video Deposition of Glen Olivi (R. Doc. 447)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent that SKA seeks to question Glen Olivi on topics relating to the fault of Philadelphia Gear.

**IT IS FURTHER ORDERED** that the motion is **DENIED** to the extent that SKA seeks to question Glen Olivi on topics relating to the liability of Fucich and FCI, as well as damages and the remediation of the project.

New Orleans, Louisiana, this 16th day of October 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**