UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FUCICH CONTRACTING, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:   18-2885** |
| **SHREAD-KUYRKENDALL & ASSOCIATES, INC., ET AL.** | **SECTION: "M" (4)** |

## ORDER

Before the Court is Travelers Casualty and Surety Company of America ("Travelers")'s **Motion to Quash the Notice of Corporate Deposition of Travelers Casualty and Surety Company of America with Incorporated Requests for Production of Documents (R. Doc. 464)** seeking an order quashing the corporate deposition of Travelers noticed for November 10, 2020. Shread-Kuyrkendall & Associates, Inc. and XL Specialty Insurance Company (collectively, "SKA") oppose this motion. R. Doc. 470. This motion was set for submission on November 4, 2020 and was heard on the briefs.

### I.  Background

On March 19, 2018, Plaintiff Fucich Contracting, Inc. ("FCI") filed this action in diversity in the District Court against SBPG, the Lake Borgne Basin Levee District ("LBBLD"), and Shread-Kuyrkendall and Associates, Inc. ("SKA") seeking declaratory relief and monetary damages arising from a contractual dispute. R. Doc. 1. The contract in dispute involved the improvement and installation of four new diesel engines at existing Pump Stations in the St. Bernard Parish (the "Project"). *Id.*

As customary in construction suretyship, Travelers required the Fuciches to execute a general agreement of indemnity ("GAI") in favor of Travelers before Travelers would issue bonds for FCI. R. Doc. 464-1, p. 3. The GAI requires that the Fuciches "shall exonerate, indemnify and

save [Travelers] harmless from and against all Loss" and "deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss." *Id.*

The central issue of dispute is the rotational conflict, which involves the purchase and corresponding Project engineering design of "Caterpillar 3512 C Diesel Engines." R. Doc. 244. Essentially, the new engines rotated in the opposite direction of the existing engines, which rendered the new engines' alignment to the refurbished gearboxes not possible and effectively prevented the installation of the new engines, halting the project in its entirety. R. Doc. 302-2, p. 85, ¶¶ 337-38. As a result of the rotational conflict, SBPG's ability to operate its pumping system at full capacity has been hindered during multiple Hurricane Seasons, since 2017, and the Project remains incomplete. As such, a main question in this suit is who is responsible for the decision to order the engine, which could not be used, Fucich, the contractor, or the engineer, SKA.

After this suit was instituted and pursuant to the GAI, Travelers requested the Fuciches to deposit as collateral security a sum sufficient to cover Travelers's anticipated loss under the bonds (the "Collateral Amount"). Travelers estimated the Collateral Amount to exceed $5,000,000 at the time of the request. R. Doc. 464-1, p. 3. The Fuciches refused, and, on December 19, 2018, Travelers filed a crossclaim seeking indemnity and injunctive relief to secure the Collateral Amount. R. Doc. 180. After holding a hearing, on May 17, 2019, the Court ordered the Fuciches to deposit $2,563,930.00 with Travelers as collateral security. R. Doc. 224.

On October 2, 2020, Travelers received a 30(b)(6) Notice of Corporate Deposition from SKA. *See* R. Doc. 464-2. Travelers contends SKA seeks testimony and documents which are outside the proper scope of discovery. R. Doc. 464-1, p. 1. Specifically, Travelers contends that the GAI executed solely between Travelers and the Fuciches is not relevant to any of SKA's claims or defenses before the Court. *Id.*

SKA contends, in opposition, that the discovery sought will produce admissible evidence and may lead to the discovery of additional admissible evidence. R. Doc. 470, p. 1. Specifically, SKA argues the GAI contract, and the ability of Fucich to post a collateral security bond is relevant to the issue of mitigation and reduction of damages. *Id.*

## II.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 30(b)(6) "allows parties to obtain testimony from a corporation, provided the party describes with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Thereafter, the named organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id.* The scope of a corporate deposition is limited by Federal Rule of Civil Procedure 26. *See Clemons v. Hartford Ins. Co. of Midwest*, No. CIV.A. 07-8917, 2009 WL 1605154, at *3 (Roby, M.J.) (E.D. La. June 5, 2009).

In addition, Rule 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016) (Wilkinson, C.M.J.). Federal

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) specifies that "[i]nformation

3

within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1).

**III. <u>Analysis</u>**

The matters of examination outlined by the Notice are as follows:

1. Traveler's demand for collateral security on Fucich Contracting Inc. ("FCI") pursuant to the General Agreement of Indemnity.
2. FCI's compliance with Traveler's demand for collateral security pursuant to the General Agreement of Indemnity.
3. FCI's posting of collateral security related to Traveler's demand in compliance with the Court's Order (see Doc. 224, attached hereto).

R. Doc. 464-2, p. 3.

In addition, the Notice requests Travelers produce the following documents:

1) Correspondence, meetings, emails and verbal communications between Travelers and Fucich Contracting Inc. (FCI) in any way relating to Traveler's demand for collateral security on FCI.
2) All documents which discuss, describe, or relate to Fucich Contracting Inc.("FCI")'s response to Traveler's demand for collateral security on FCI.

4

3) All documents which relate to FCI's compliance with Traveler's demand for collateral security.
4) All documents which relate to FCI's posting of collateral security in compliance with the Court's Order (see Doc. 224, attached hereto).

R. Doc. 464-2, p. 4.

Travelers contends the proposed areas of inquiry and production specified by SKA are not relevant where SKA is not a party to the GAI. R. Doc. 464-1, p. 4. Travelers further contends that neither the corporate deposition nor the requested document production will provide any admissible evidence to further SKA's claims or defenses where SKA has not asserted any claim or defense relating to the GAI or the enforcement of the collateral security provisions. R. Doc. 464-1, p. 7. Travelers further contends whether the Fuciches complied with the GAI has absolutely no bearing on which party is responsible for the Rotational Conflict or the cost to correct the Rotational Conflict. R. Doc. 464-1, p. 4.

SKA contends, in opposition, that evidence that FCI had sufficient resources to post a collateral security bond in excess of 2.5 million dollars demonstrates that FCI had the financial resources necessary to complete the Project. R. Doc. 470, p. 2. SKA, therefore, argues the discovery sought will show that FCI could have completed the Project had it desired to do so and could have thereby significantly mitigated and reduced its own damages as well as the damages suffered by other parties. *Id.* SKA finally contends SKA's defense that FCI breached its obligation to mitigate its damages and exacerbated damages in bad faith under the doctrine of abuse of rights. R. Doc. 470, p. 9.

Here, the Court fails to see the relevance of the information sought by SKA. First, SKA was not a party to the GAI. Second, the information does not provide any information directly relevant to any of SKA's claims or defenses. Finally, the District Judge ordered the Fuciches to

deposit the $2,563,930.00. The Fuciches' compliance with this order would thereby render the money unavailable. Thus, the money could not be used to complete the project or mitigate damages. The Court, therefore, finds that SKA's 30(b)(6) Notice of Corporate Deposition to Travelers should be quashed.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that Travelers' **Motion to Quash the Notice of Corporate Deposition of Travelers Casualty and Surety Company of America with Incorporated Requests for Production of Documents (R. Doc. 464)** is **GRANTED**.

New Orleans, Louisiana, this 4th day of November 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**