UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FUCICH CONTRACTING, INC., *et al.* | CIVIL ACTION |
| VERSUS | NO. 18-2885 |
| SHREAD-KUYRKENDALL & ASSOCIATES, INC., *et al.* | SECTION M (4) |

## ORDER & REASONS

Before the Court are the objections of plaintiff Fucich Contracting, Inc. ("FCI") to the magistrate judge's ruling on a motion to compel.[1] Defendants St. Bernard Parish Government ("SBPG")[2] and Shread-Kuyrkendall and Associates, Inc. and XL Specialty Insurance Company (together, "SKA")[3] oppose the motion. Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons sustaining the objections in one respect but otherwise overruling them.

**I.   BACKGROUND**

This case arises out of a construction dispute over a component-compatibility problem, specifically, a rotational conflict, between the engines and gear reducers intended for use in back-up storm water drainage pumps critical to a public works improvement project known as the Lake Borgne Basin Levee District Pump Station #1 & #4 Pump Upgrade (the "Project").[4] SBPG hired FCI as the Project contractor and SKA as the Project engineer. Pursuant to the Louisiana Public Works Act, Travelers Casualty and Surety Company of America ("Travelers") issued a

---
[1] R. Doc. 498.
[2] R. Doc. 518.
[3] R. Doc. 520.
[4] R. Doc. 373 at 1-4.

performance and payment surety bond naming FCI as principal and SBPG as obligee.[5] In connection with this bond, FCI, Clayton Fucich, and Kathleen Fucich (together, the "Fucich Parties") executed a general agreement of indemnity ("GAI") in favor of Travelers, agreeing to indemnify Travelers from loss and to deposit collateral if needed to compensate for any loss or anticipated loss.[6]

When the rotational conflict became apparent, SBPG informed Travelers that it intended to terminate FCI.[7] FCI filed this lawsuit against SBPG and SKA, and SBPG did, in fact, terminate FCI several months later.[8] SBPG filed a counterclaim and third-party demand seeking to hold FCI and SKA responsible for the rotational conflict and resulting failure to complete the Project. Travelers completed an independent investigation in which it concluded that the rotational conflict was caused by SKA.[9] As a result, Travelers found that FCI did not have a duty to finish the Project.[10] Since FCI, as Travelers's principal, did not (in its opinion) have a duty to finish the Project, Travelers, as surety, refused to complete the Project.[11] SBPG then added Travelers to the lawsuit.[12] Given the claims against FCI, Travelers sought to have the Fucich Parties provide it with collateral security. Pursuant to the collateral and indemnity provision in the GAI, this Court ordered the Fucich Parties to provide Travelers with $2,563,930.00 as collateral security.[13] Thereafter, FCI filed a claim against Travelers for bad-faith breach of the GAI.[14]

---

[5] R. Doc. 431 at 2.
[6] Id.
[7] Id.
[8] Id.
[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] R. Docs. 184; 224.
[14] R. Doc. 431 at 2.

SKA contends that during the September 2, 2020 corporate deposition of FCI, Clayton Fucich, as the designated representative of FCI, raised an advice-of-counsel defense to claims that FCI failed to mitigate its own damages and exacerbated SBPG's damages.[15] As a result, SKA filed a motion to compel FCI to respond to discovery related to the defense.[16] SKA argues that FCI (through Fucich) asserted the advice-of-counsel defense in two ways.[17]

First, FCI stated it refused to attend an October 15, 2018 "technical meeting" based on the advice of its lawyer at the time, Lee Kohler.[18] The purpose of the meeting was to discuss what had to be done to finish the Project from a technical standpoint. In an email to all counsel in the case, Kohler explained: "FCI considers this proposed meeting simply another attempt to have FCI perform uncompensated design work for the Parish and SKA, who can then use that work to award a completion contract to another contractor."[19] When questioned about this email at the corporate deposition, Fucich stated that he refused to attend the meeting based on "the advice of counsel on this,"[20] positing: "You're going to have to ask Lee [Kohler] what all of that stuff meant. He wrote the letter."[21] When asked, "Do you recall telling everyone, through Mr. Kohler, that you were not going to attend that meeting?," Fucich again responded: "I was going with the advice of counsel."[22]

Second, SKA argues that FCI asserted advice of counsel with respect to a pair of letters concerning settlement negotiations. In the corporate deposition of FCI, SKA referenced a letter Travelers sent to the Fucich Parties demanding collateral security.[23] SKA quoted Travelers's

---

[15] R. Doc. 482-2 at 1-4.
[16] R. Doc. 482.
[17] R. Doc. 482-2 at 2-5.
[18] R. Doc. 485-1 at 3-5.
[19] R. Doc. 482-3 at 1.
[20] R. Doc. 482-4 at 2.
[21] *Id.* at 3.
[22] *Id.*
[23] R. Doc. 482-5. The date of the letter, either October 9, 2018, or November 12, 2018, appears to be in dispute. R. Doc. 485 at 9 n.22.

assessment of "Fucich's uncompromising refusal to participate in the formal Settlement Conference with the other parties and the Magistrate," thereby jeopardizing FCI's ability to mitigate its risk and that of Travelers.[24] When asked if that statement was accurate, Clayton Fucich responded: "I don't – I don't know that that's accurate. You know, again, I was just taking [Kohler's] advice on this. I don't – I don't know what the – what the intent was."[25] SKA references another letter, this one dated October 10, 2018, that Kohler sent to opposing counsel setting out the Fucich Parties' settlement proposal in which they requested that "[t]he Parties … engage an independent engineer to act as an arbiter of future disputes arising out of the work."[26] When asked why he made this request, Fucich said "[m]y attorney advised that it would be a good idea."[27]

On December 3, 2020, the magistrate judge granted in part SKA's motion to compel,[28] finding that in several instances during deposition, FCI's corporate representative provided evasive or incomplete answers and "shift[ed] accountability onto his former counsel [to] hide behind the shield of advice of counsel."[29] The magistrate judge determined that FCI waived its attorney-client privilege in certain limited respects.[30] The magistrate judge ordered FCI to submit to another deposition and produce documents related to "those communications between Fucich and his former counsel, Lee Kohler, regarding his failure to attend technical meetings, failure to participate in settlement efforts, and refusal to turn over the engines for which Fucich relies on advice of

---

[24] R. Doc. 482-4 at 4.
[25] *Id.*
[26] R. Doc. 482-7 at 3.
[27] R. Doc. 482-6 at 7.
[28] The magistrate judge denied SKA's motion to compel to the extent it sought discovery regarding FCI's fee dispute with its former counsel.
[29] R. Doc. 490 at 4.
[30] *Id.* at 7-8 & n.1 (construing Fucich's invitation to question FCI's former counsel "as a waiver of privilege on its own").

counsel as justification regarding his duty to mitigate damages."[31]  On December 16, 2020, FCI filed timely objections to the magistrate judge's ruling.[32]

## II. PENDING MOTION

In its objections, FCI argues that the order is overly broad and should be modified.[33] Specifically, FCI maintains that (1) "[n]o evidence presented by SKA related to the Motion to Compel can support the Order's directive related to the Engine Ownership issue," and (2) "[t]he Order is overly broad with respect to its directive for the production of privileged communications and deposition inquiry [into] any advice 'not to participate in settlement conferences.'"[34]  FCI argues that the order "should be limited solely to the decision related to FCI's participation in the October 15, 2018 technical meeting" because this was the extent of the evidence before the Court concerning FCI's reliance on advice of counsel.[35]

In opposition, SKA observes that FCI does not contest the finding that it waived its attorney-client privilege by relying on advice of counsel in response to questions about its declining to participate in the technical meeting and refusing to attend the settlement conference.[36] Further, SKA argues that there is evidence to support the connection between FCI's advice-of-counsel stratagem, on the one hand, and the engine-ownership issue and FCI's participation in settlement negotiations, on the other.[37]  In short, SKA insists that "[w]hen FCI took the position that it was simply relying on the 'advice of counsel' [as a defense to the claims that FCI failed to mitigate its own damages and exacerbated those of SBPG], FCI waived the attorney-client communication privilege, and SKA should be allowed to explore whether FCI sabotaged the

---

[31] *Id.* at 8-9.
[32] R. Doc. 498.
[33] R. Doc. 498 at 1.
[34] R. Doc. 498-1 at 6.
[35] *Id.* at 6-7.
[36] R. Doc. 520 at 2.
[37] *Id.* at 4-10.

project completion on advice of counsel."[38]  In its opposition, SBPG echoes SKA's position, explaining the benefits it has already gleaned for its bad-faith case from FCI's partial production of these documents.[39]

## III. LAW & ANALYSIS

### A. Legal Standards

#### 1. Standard for Review of a Magistrate Judge's Order

Magistrate judges are empowered to "hear and determine" certain nondispositive pretrial motions.  28 U.S.C. § 636(b)(1)(A); *see also PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 n.11 (5th Cir. 1996).  If a party is dissatisfied with a magistrate judge's ruling on a nondispositive motion, it may appeal to the district court.  Fed. R. Civ. P. 72(a).  When timely objections are raised, the district court will "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A).  The court reviews the magistrate judge's "factual findings under a clearly erroneous standard, while legal conclusions are reviewed *de novo*."  *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (quotations omitted).  A factual "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

#### 2. Waiver of Attorney-Client Privilege

The attorney-client privilege encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and the administration of justice."  *Succession of Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 1138, 1142 (La. 1987) ("The privilege recognizes that sound legal advice or advocacy serves public ends

---

[38] *Id.* at 11.
[39] R. Doc. 518-7.

and that such advice or advocacy depends on the lawyer's being fully informed by the client.").[40] "A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is between the client … and the client's lawyer." La. Code Evid. art. 506(B)(1).

However, an individual can waive this privilege when he "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." *Id*. art. 502(A). "'[P]lacing privileged communications at issue' [by] an affirmative pleading of a claim or defense that inevitably requires the introduction of privileged communications" constitutes a waiver. *Succession of Smith*, 513 So. 2d at 1143-44. Such a waiver extends "to communications on the same subject under his control." *Id.* at 1145. A court must consider whether "the privilege holder has committed himself to a course of action that will require the disclosure of a privileged communication." *Id.* at 1146. A waiver does not open the door to all attorney-client communications. "The client's offer of his own or the attorney's testimony as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consultation is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former." *Id.* at 1150 (on application for rehearing; emphasis in original).

---

[40] Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Therefore, in this diversity action, Louisiana law applies to FCI's claim of privilege.

"Where … a party asserts as an essential element of his defense reliance upon the advice of counsel, … the party waives the attorney-client privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought." *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 721 (N.D. Ill. 1978) (holding that party waived attorney-client privilege by raising reliance-on-advice-of-counsel as a defense in deposition testimony), *quoted in Ward v. Succession of Freeman*, 854 F.2d 780, 787-88 (5th Cir. 1988). Louisiana law is to the same effect. In *McNeely v. Bd. of River Port Pilot Comm'rs*, 534 So. 2d 1255 (La. 1988), the Louisiana supreme court held that a limited waiver of the attorney-client privilege applied to permit deposition of a party's former counsel when that party invoked advice of counsel as a basis for its affirmative defense, thereby placing privileged communications at issue. *Id.* at 1255-56.

Courts have found that such a waiver also occurs when a party asserts advice of counsel to block deposition questions about certain topics. *See, e.g., Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 2017 WL 3475577, at *2-3 (E.D. Tex. Aug. 11, 2017) (ordering party who asserted advice of counsel in response to deposition questions to submit to another deposition) (applying Federal Circuit law); *In re Taxable Mun. Bond Securities Litig.*, 1993 WL 323069, at *3 (E.D. La. Aug. 18, 1993) (allowing discovery of attorney-client communications where party voluntarily asserted advice of counsel with respect to certain transactions).

## B. Analysis

The Court agrees with the magistrate judge that FCI has waived the attorney-client privilege by invoking advice of counsel as grounds for refusing to answer certain deposition questions.[41] However, her order allowing additional discovery must be limited to those specific

---

[41] To be sure, FCI itself also agrees with the magistrate judge's order as it pertains "to FCI's participation in the October 15, 2018 technical meeting." R. Doc. 498-1 at 6.

topics as to which FCI waived its privilege. During its deposition, FCI expressly raised advice of counsel, and thus waived its attorney-client privilege, in relation to questions about its lack of attendance at the October 15, 2018 technical meeting, its refusal to participate in settlement efforts on or before November 12, 2018 (the apparent date of Travelers's letter), and its request for an independent engineer to act as an arbiter for settlement purposes. By relying on the advice of its former counsel to avoid responding directly to these deposition questions, FCI placed in issue these otherwise privileged communications and, consequently, must produce evidence of such communications with its former attorney in order to provide complete responses to this discovery. And FCI does not contend otherwise – at least as to the technical meeting and the failure to attend the settlement conference. Accordingly, the Court holds that the magistrate judge's ruling on these points is neither clearly erroneous nor contrary to law.

FCI does assert, however, that there is no proper evidence presented with SKA's motion to compel to show that FCI raised advice of counsel in response to questions relating to the engine-ownership issue or settlement efforts after November 2018. As to the engine-ownership issue, this Court finds no error in the finding, implicit in the magistrate judge's ruling, that this issue was at the heart of the technical meeting and thus bound up with the subject matter as to which FCI's designated representative invoked advice of counsel.[42] After all, from a technical standpoint, it was necessary that FCI return the engines to SBPG if the Project were to be completed. Hence, the magistrate judge's order that FCI submit to deposition and produce communications between FCI and its former counsel regarding its refusal to turn over engines is not clearly erroneous or contrary to law. As to settlement efforts after November 2018, because neither SKA nor SBPG points to any instance in which FCI asserted advice of counsel to avoid answering questions about

---

[42] R. Docs. 520-4 at 5-18; 520-5 at 2-3.

such matters, FCI is not required to submit to discovery concerning such efforts. Therefore, FCI retains its privilege on this score.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the objections of plaintiff Fucich Contracting, Inc. to the magistrate judge's ruling on the motion to compel are SUSTAINED IN PART and OVERRULED IN PART.

IT IS FURTHER ORDERED that FCI shall submit to another deposition and produce communications concerning the limited subject areas of its lack of attendance at the October 15, 2018 technical meeting, its refusal to participate in settlement efforts on or before November 12, 2018, and its refusal to turn over the engines. FCI need not submit to discovery concerning any settlement efforts after November 12, 2018.

New Orleans, Louisiana, this 12th day of May, 2021.

                                                  BARRY W. ASHE
                                                  UNITED STATES DISTRICT JUDGE