UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


FUCICH CONTRACTING, INC., *et al.*                    CIVIL ACTION

VERSUS                                                 NO. 18-2885

SHREAD-KUYRKENDALL &                                   SECTION M (4)
ASSOCIATES, INC., *et al.*


**ORDER & REASONS**

Before the Court is the motion of plaintiff Fucich Contracting, Inc. ("FCI") for reconsideration of this Court's May 15, 2021 order[1] enforcing the interim settlement agreement between FCI and defendant St. Bernard Parish Government ("SBPG").[2]  SBPG opposes the motion.[3]  FCI replies.[4]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion in part and denying the motion in part.

I.       **BACKGROUND**

This case arises out of a construction dispute over a component-compatibility problem, specifically, a rotational conflict, between the engines and gear reducers intended for use in back-up storm water drainage pumps critical to a public works improvement project known as the Lake Borgne Basin Levee District Pump Station #1 & #4 Pump Upgrade (the "Project").[5]  SBPG hired FCI as the Project contractor and Shread-Kuyrkendall & Associates, Inc. ("SKA") as the Project engineer.  Pursuant to the Louisiana Public Works Act, Travelers Casualty and Surety Company

---

[1] R. Doc. 546.
[2] R. Doc. 568.
[3] R. Doc. 570.
[4] R. Doc. 576.
[5] R. Doc. 373 at 1-4.

of America ("Travelers") issued a performance and payment surety bond naming FCI as principal and SBPG as obligee.[6]   When the rotational conflict became apparent, SBPG informed Travelers that it intended to terminate FCI.[7]   FCI filed this lawsuit against SBPG and SKA, and SBPG did, in fact, terminate FCI several months later.[8]   SBPG filed a counterclaim and third-party demand seeking to hold FCI and SKA responsible for the rotational conflict and resulting failure to complete the Project.

In the midst of this dispute, the Project was, and still is, unfinished – meaning that the citizens of St. Bernard Parish to this day do not enjoy the full protection against flooding the Project intended to afford.  The Project requires a total of four engines.  Three engines were delivered to SBPG but the fourth remained in the possession of the engine vendor.[9]   On or around December 27, 2018, FCI picked up the fourth engine.[10]

On February 25, 2019, SBPG and FCI entered into an interim settlement agreement on the record before the magistrate judge.[11]   SBPG agreed "to pay [FCI] $194,219.90, which represents the balance of the engines per the scheduled values less the retainage."[12]   In exchange, FCI agreed "to irrevocably release any ownership claim as to the four engines, which includes the three that are currently on Pump Stations One and Four and also the one in his possession, which it will allow [SBPG] to pick up at [SBPG's] expense, as well as any and all material or equipment currently on site at either Pump Station One or Four and any materials or supplies in the possession of Philadelphia Gear.  All of these things, FCI agrees to release any ownership interest and claim."[13]

---

[6] R. Doc. 431 at 2.
[7] *Id.*
[8] *Id.*
[9] R. Doc. 524-1 at 4.
[10] *Id.*
[11] R. Doc. 524-3.
[12] *Id.* at 2.  The term "scheduled values" refers to the schedule of values that the parties used to delineate the various phases for completing the Project and to assign the cost for completing each phase.  *See* R. Doc. 550-6.
[13] R. Doc. 524-3 at 3.

SBPG paid the full amount of the settlement sum to FCI.[14]  On March 12, 2019, SBPG picked up the engine from FCI's premises.[15]

Approximately two years later, SBPG moved this Court to enforce the interim settlement agreement, arguing that FCI had breached the agreement by retaining possession of "several important pieces to the engine."[16]  On May 14, 2021, this Court granted the motion and explained:

> Regardless of whether a particular engine item, part, appurtenance, loose box, etc. is referenced by name in this Order & Reasons or in the parties' motion papers, the Court trusts that FCI understands that any and all components needed for the engines to function are deemed by this Court to fall within the intended scope of the settlement agreement and are ordered to be turned over to SBPG immediately. Any failure on FCI's part to comply fully with the Court's orders shall be considered an act of contempt.[17]

Months after the Court issued this order (referred to as "the May 14, 2021 order"), SBPG moved to enforce it and to hold FCI in contempt,[18] alleging that FCI violated the order by failing to turn over multiple items that were expected to be transferred as a result of the settlement agreement, including various items listed in an exhibit B[19] and others listed in an exhibit C.[20]  FCI argued that the exhibit C items, which, according to FCI, are "installation materials" for purposes of the schedule of values and, thus, were not contemplated to be covered by the settlement agreement, which it says encompassed only engine components.[21]

---

[14] R. Doc. 524-1 at 5.

[15] R. Docs. 524-1 at 5; 538-4 at 2.

[16] R. Doc. 524-1 at 5.

[17] R. Doc. 546 at 8 (footnote omitted).

[18] R. Docs. 550; 550-1.

[19] R. Doc. 559-16 (identified as certain engine-related components that were shipped as "loose items").

[20] R. Doc. 550-17 (entitled "missing engine appurtenances").

[21] R. Doc. 559 at 4.  FCI's position ties back to the line items on the schedule of values.  R. Doc. 550-6.  FCI says that the items in exhibit C are installation materials that were encompassed within line item nos. 15-18 on the schedule of values, as opposed to engine components that were encompassed within line item nos. 10-14.  SBPG argues just the opposite, emphasizing that the phrase "installation, startup and acceptance," as used in the schedule of values, must have been limited to services associated with installation, not equipment, components, or materials.

On October 19, 2021, this Court heard oral argument (referred to as "the October 19, 2021 hearing") on the motion for contempt.[22]  It denied the motion, ruling that SBPG failed to prove by clear and convincing evidence either (1) that the allegedly missing items listed in exhibit B were in the possession of FCI and that the missing items in exhibit C were intended by the parties to be encompassed in the schedule of values and therefore within the scope of the settlement agreement; or (2) that FCI acted in bad faith regarding the May 14, 2021 order enforcing the settlement agreement.[23]  The Court also ordered that FCI turn over to SBPG any exhibit B items still held in its possession and encourage the turnover of such missing items to the extent held by two non-parties.[24]

## II.  PENDING MOTION

In its motion, FCI asks the Court to either (1) rescind its order enforcing the settlement agreement and require SBPG to issue a certificate of acceptance to gain ownership of the exhibit B materials; or (2) resolve whether the exhibit C materials were contemplated to fall within the parties' February 25, 2019 settlement agreement.[25]  In its opposition, which was filed after the October 19, 2021 hearing and after the Court's denial of SBPG's motion for contempt, SBPG argues that the need for the Court to reconsider the May 14, 2021 order was rendered moot by the October 19, 2021 hearing and the Court's ruling.[26]  In particular, SBPG observes that the October 19, 2021 hearing "resolve[d] any doubt that the items on Exhibit C were ... not subject to the settlement agreement."[27]  In reply, FCI maintains that its motion for reconsideration is not moot

---

[22] R. Doc. 569 at 1.
[23] *Id.* at 2.
[24] *Id.*
[25] R. Doc. 568-1 at 2.
[26] R. Doc. 570 at 1.
[27] *Id.*

and asks that the Court confirm that the exhibit C materials are not included in the settlement agreement.[28]

## III.    LAW & ANALYSIS

### A.  Louisiana Law on Compromise

A district court has the inherent power to enforce settlement agreements in cases pending before it.  *Richardson v. Famous Bourbon Mgmt. Grp., Inc.*, 857 F. App'x 182, 184 (5th Cir. 2021) (citing *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386 (5th Cir. 1984)).  The construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally.  *Id.* (citing *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987)).  "The settlement agreement between the plaintiffs and the defendants can be enforced on a finding that a binding, written agreement exists under Louisiana law."  *Id.* (citing *Lee v. Hunt*, 631 F.2d 1171, 1173-74 (5th Cir. 1980)).  Here, the parties do not dispute the existence of a binding settlement agreement, but confine their dispute to its scope.

Under Louisiana law, a settlement agreement is called a compromise.  La. Civ. Code art. 3071.  A compromise is defined as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."  *Id.*  Compromises are contracts, so the "'rules of construction applicable to contracts are therefore used.'"  *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481-82 (5th Cir. 2014) (quoting *Doré Energy Corp. v. Prospective Inv. & Trading Co.*, 570 F.3d 219, 225 (5th Cir. 2009)).  "A compromise instrument is the law between the parties and must be interpreted

---

[28] R. Doc. 576.

according to the parties' intent." *Chauvin v. Exxon Mobil Corp.*, 158 So. 3d 761, 766 (La. 2014); *see also Meadows v. Adams*, 316 So. 3d 5, 14 (La. App. 2020) (same).[29]

Article 2046 of the Louisiana Civil Code provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." The Louisiana supreme court clarified that "Article 2046 emphasizes that the process involves no *further* interpretation, as opposed to no interpretation at all." *Ortego v. State, Dep't of Transp. & Dev.*, 689 So. 2d 1358, 1363 (La. 1997) (emphasis in original). "Courts apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances." *Trahan v. Coca Cola Bottling Co. United, Inc.*, 894 So. 2d 1096, 1107 (La. 2005). While "[t]he words of a contract must be given their generally prevailing meaning," "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047.

### B. Analysis

Because a compromise is the law between the parties, the Court must determine the parties' intent. *Chauvin*, 158 So. 3d at 766. And, while a compromise "settles only those differences that the parties clearly intended to settle," the agreement includes "the necessary consequences of what they express." La. Civ. Code art. 3076. As this Court previously determined,[30] the parties intended to and did incorporate the schedule of values into their settlement agreement.[31] Thus, the Court denies FCI's motion for reconsideration to the extent it challenges this holding.

---

[29] A compromise may be "recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings." La. Civ. Code art. 3072.

[30] R. Doc. 546 at 6-8.

[31] *See* R. Doc. 524-3 at 2-3.

Still, FCI's motion for reconsideration poses the additional issue whether the items listed in exhibits B and C were contemplated to be a part of the schedule of values, and, consequently, a part of the parties' settlement agreement.  With respect to exhibit B, FCI asks the Court to rescind its May 14, 2021 order and for SBPG to be required (1) to abide by the original contract documents; and (2) to issue a certificate of acceptance in order for these materials to be transferred to SBPG.[32] As noted during the October 19, 2021 hearing, though, the Court previously recognized that the schedule of values and, hence, the items listed in exhibit B were made a part of the settlement agreement.[33]  Accordingly, the terms of the settlement agreement, which essentially supersede the parties' contract insofar as the exhibit B materials are concerned, now govern how the parties are to handle the transfer of these items.

With respect to exhibit C, FCI asks the Court to issue an affirmative ruling that the exhibit C items are not included in the settlement agreement.[34]  FCI contends that the exhibit C materials, which, it says, were "never discussed, mentioned, or considered until SBPG's motion for contempt," do not fall within the ambit of the settlement agreement.[35]  In its opposition, SBPG reads the Court's October 19, 2021 ruling to have held that the items listed in exhibit C are not subject to the settlement agreement and advises that it will not challenge this understanding of the Court's holding.[36]  Consequently, there is no disagreement between the parties on this point as both agree that the exhibit C materials are not encompassed in the settlement agreement. Therefore, the Court grants FCI's motion for reconsideration in order to conform its prior ruling to the parties' understanding with respect to the exhibit C items.

---

[32] R. Doc. 568-1 at 9.
[33] *See* R. Doc. 569 at 2; *see also* R. Doc. 570 at 3 ("As the Court concluded on October 19, 2021, the items in Exhibit B were in fact part of the settlement agreement that FCI did not produce.")
[34] R. Doc. 576 at 1.
[35] R. Doc. 568-1 at 10.
[36] R. Doc. 570 at 1.

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that FCI's motion for reconsideration (R. Doc. 568) is DENIED in part and GRANTED in part. The motion is denied insofar as FCI's request for the Court to rescind its May 14, 2021 order and to require SBPG to issue a certificate of acceptance to gain ownership of the exhibit B materials.[37]   The motion is granted as unopposed insofar as FCI asks the Court to clarify that the exhibit C materials are not encompassed within the parties' settlement agreement.[38]

New Orleans, Louisiana, this 15th day of November, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[37] *See* R. Doc. 568-1 at 2.
[38] *See id.*