UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FUCICH CONTRACTING, INC., *et al.*                  CIVIL ACTION

VERSUS                                              NO. 18-2885

SHREAD-KUYRKENDALL &                                SECTION M (4)
ASSOCIATES, INC., *et al.*

## ORDER & REASONS

Before the Court is the memorandum filed by Travelers Casualty and Surety Company of America ("Travelers") addressing the amount and reasonableness of its claimed loss, the conditions to attach to the permanent injunction, and the rationale for the proposed form of judgment.[1]  Fucich Contracting, Inc. ("FCI") and Clayton and Kathleen Fucich ("the Fuciches") respond in opposition, arguing only that the attorney's fees and costs Travelers requests should be reduced.[2]  Travelers replies, observing that FCI and the Fuciches fail to dispute both Travelers' proposed terms of the permanent injunction and its proposed form of judgment and reurging that the amount of the requested attorney's fees and costs is reasonable.[3]

Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons fixing the amount of attorney's fees, costs, and other loss awarded to Travelers[4] in the total amount of $1,624,310.18, setting the terms of the permanent injunction to

---

[1] R. Doc. 676.  In its October 31, 2022 Findings of Fact & Conclusions of Law, the Court directed Travelers to file a memorandum addressing attorney's fees and costs, the terms of the permanent injunction to be issued, and the rationale for the form of judgment Travelers proposes should be entered based on the Court's decision.  R. Doc. 675 at 74.

[2] R. Doc. 679.

[3] R. Doc. 680.

[4] The Court previously determined that Travelers is entitled to exoneration for the $612,000.00 it is obligated to pay the St. Bernard Parish Government pursuant to the settlement agreement the parties executed.  R. Doc. 675 at 73.  This amount is the "other loss" that Travelers is requesting in addition to fees and costs.

be issued, and providing the rationale for the form of judgment to be entered based on the Court's October 31, 2022 Findings of Fact & Conclusions of Law.[5]

## I.    BACKGROUND[6]

This matter involves claims between FCI and the Fuciches on the one hand, and Travelers on the other hand, arising out of a construction dispute (including the construction contract, bond, and indemnity agreement governing the construction project) and a settlement agreement entered to resolve the dispute.  Travelers acted as surety on a performance and payment bond (the "Bond") it issued to FCI in relation to a public works improvement project (the "Project") that the St. Bernard Parish Government (the "Parish") awarded to FCI following a public bid.[7]  As a condition precedent to issuing bonds to FCI, Travelers required an indemnity agreement from FCI and the Fuciches (collectively, the "Indemnitors").[8]  The Indemnitors executed a General Agreement for Indemnity ("GAI") in favor of Travelers, agreeing to exonerate, indemnify, and save Travelers harmless from and against any loss it incurred on a bond issued on behalf of FCI.[9]

After a settlement agreement resolved the claims among most of the parties, the remaining claims – those between Travelers and the Indemnitors – were tried before the Court, sitting without a jury, over three days.  After considering the evidence admitted at trial, the arguments of counsel, and the applicable law, the Court issued its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.[10]  The Court held that the GAI executed by Travelers and the Indemnitors was valid and enforceable and that it formed the law between the parties.[11]  The Court then held that the GAI provided Travelers with the contractual right to (1)

---

[5] *Id.* at 1-75.
[6] A more complete recitation of the facts can be found in the Findings of Fact & Conclusions of Law.  *Id.*
[7] *Id.* at 4-6.
[8] *Id.* at 4.
[9] *Id.* at 5.
[10] *Id.* at 1-75.
[11] *Id.* at 52-53.

seek collateral security from the Indemnitors, and (2) settle the claims by and against the Indemnitors, rejecting their argument that Travelers' actions nullified the GAI and the prime contract with the Parish.[12]   The Court concluded that, pursuant to the terms of the GAI, the Indemnitors are obligated to indemnify, reimburse, and exonerate Travelers for the loss it sustained by issuing the construction bond on behalf of FCI.[13]   This loss, the Court held, includes attorney's fees and costs Travelers incurred in both issuing the bond on behalf of FCI and enforcing the GAI against the Indemnitors, as well as the $612,000.00 Travelers owes to the Parish as part of the settlement agreement.[14]   Finally, the Court held that Travelers is entitled to a permanent injunction mandating specific performance of the collateral security provision of the GAI.[15]

The Court directed Travelers to file a memorandum (with supporting evidence) addressing the amount and reasonableness of the attorney's fees and costs it should be awarded, the terms of the permanent injunction to be issued, and the rationale for the form of judgment Travelers proposes should be entered based on the Court's findings of fact and conclusions of law.[16] Travelers did so, addressing each issue as directed by the Court.[17]   The Indemnitors filed an opposition, disputing only the amount of attorney's fees and costs claimed by Travelers.[18]

---

[12] *Id.* at 53-61.
[13] *Id.* at 72.
[14] *Id.* at 73.
[15] *Id.* at 74.
[16] *Id.* at 74-75.
[17] R. Docs. 676; 680.
[18] R. Doc. 679.

## II.      LAW & ANALYSIS

### A. Travelers' Request for Attorney's Fees and Costs

Travelers seeks to have the Court fix the amount of attorney's fees and costs it is entitled to recover.  The Indemnitors oppose the amount of fees requested by Travelers, arguing broadly that the total amount is excessive and contains duplicative work and that Travelers failed to execute proper billing judgment.[19]  In evaluating the reasonableness of Travelers' request for attorney's fees, the Court will first determine the "lodestar" and then consider whether an upward or downward adjustment is warranted.

In calculating the lodestar, a court must determine the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).  As the party requesting fees, Travelers bears the burden of establishing the reasonableness of the fees it requests by submitting adequate documentation – namely, time records, affidavits, and the like.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (observing that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012).  "After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended 'by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections."  *Who Dat Yat Chat*, 838 F. Supp. 2d at 519 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).  The lodestar determination is presumed reasonable, but may be adjusted upward or downward depending on

---

[19] R. Doc. 679 at 1, 4-5, 9.

the weight a court assigns to the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[20]

Travelers requests $914,737.50 in attorney's fees through October 31, 2022,[21] plus an additional $30,000.00 "for the tasks remaining in this matter (not including any potential tasks related to any appeal of this Court's decision)."[22]  Travelers also requests litigation costs, travel expenses, and consultant fees and costs in the amount of $150,852.17, for a total fee-and-cost award of $1,065,589.67.[23]  During the course of this litigation, Travelers was represented by Krebs Farley & Dry, PLLC ("Krebs Farley & Dry").  Krebs Farley & Dry attorneys logged 4,031.2 hours

---

[20] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.  However, the Supreme Court and Fifth Circuit have stated that several of the *Johnson* factors – namely, the complexity of the issues, the results obtained, the special skill and experience of counsel, and the preclusion of other employment – are fully reflected and subsumed in the lodestar amount.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Shipes v. Trinity Indus.*, 987 F.2d 311, 322 (5th Cir. 1993).

Although the issue was not raised or briefed by any party, Fifth Circuit precedent indicates that "a fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case," which in this case was Louisiana – rather than federal – law.  *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  "In Louisiana, the amount of an attorneys'-fees award is governed by Rule 1.5 of the Rules of Professional Conduct."  *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (citing *State Dep't of Transp. & Dev. v. Williamson*, 597 So. 2d 439, 442 n.9 (La. 1992)).  The Louisiana supreme court has derived ten factors (the "*Williamson* factors") from Rule 1.5 that courts applying Louisiana law must consider to determine the reasonableness of attorney's fees: "(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge."  *Williamson*, 597 So. 2d at 442.  The *Williamson* factors, however, "are very similar to those used in the federal 'lodestar' method as set out in *Johnson*."  *Chevron USA*, 689 F.3d at 505.  Because the parties here briefed the issue using the federal lodestar framework, applying "factors essentially identical to those required by Louisiana law," *id.* at 506, the Court will likewise use the federal lodestar framework to determine the reasonableness of Travelers' request for attorney's fees.

[21] While Travelers states that the total amount of attorney's fees incurred as of October 31, 2022, is $915,373.50, *see* R. Docs. 676 at 14; 676-1 at 4, a review of the final calculation of its Local Rule 54.2 Attorney's Fee Report, R. Doc. 676-2 at 315, indicates that the total is actually $914,737.50, showing the higher figure to be an obvious typographical error.  The Court thus deems Travelers' request to be for the lower figure.

[22] R. Doc. 676 at 10.  The Court will not award fees for future work or for work that has not yet been documented.  To the extent Travelers later believes it is entitled to an additional award of fees for such work, it may submit an application for same at the appropriate time, which means, at the very least, after such fees have been incurred.

[23] R. Docs. 676 at 3; 676-1 at 4, 6-10.

5

working on this matter between June 2018 and October 2022.[24]  In the exercise of billing judgment, Krebs Farley & Dry wrote off fees it believed were "duplicative entries across multiple timekeepers" and did "not include[] any administrative time expended by either Krebs Farley & Dry staff or Travelers's counsel incurred in the assistance of preparation for trial before this Court."[25]

In support of these amounts, Travelers submits detailed billing records of its counsel,[26] supported by a sworn affidavit, and an itemized, sworn statement of loss by an employee of Travelers detailing, among other things, the various expenses it incurred in connection with the case.[27]  According to the affidavits and billing records, Travelers seeks to recover for services performed by multiple Krebs Farley & Dry attorneys, with four of them rendering the bulk of the work: David J. Krebs, an attorney with 40 years of legal experience, who was billed at a rate of $230 or $265 per hour; Craig N. Mangum, an attorney with 14 years of legal experience, who was billed at a rate of $230 or $265 per hour; Hannah N. Lafrance, an attorney with approximately two years of legal experience, who was billed at a rate of $220 per hour; and Emily Ross, an attorney with approximately six years of legal experience at the time of her participation in the case, who billed at a rate of $185 per hour.[28]

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *Martinez v. Refinery Terminal Fire Co.*, 2016 WL

---

[24] R. Doc. 676-2 at 315.
[25] *Id.* at 7.
[26] *Id.* at 1-315.
[27] R. Doc. 676-1.
[28] R. Doc. 676-2 at 4-6.  In the affidavit submitted in support of its detailed billing records, Travelers' counsel notes that "other tasks were performed by associates and partners on an as needed basis" in addition to the attorneys specifically listed above.  R. Doc. 676-2 at 4 n.2.  For example, Krebs Farley & Dry associate attorney Megan Daily performed the majority of the billed work not done by one of the four listed attorneys; she was billed at a rate of $185 per hour.  *Id.*

4594945, at *7 (S.D. Tex. Sept. 2, 2016) (citing *Kellstrom*, 50 F.3d at 328).  The Indemnitors do not challenge the billing rates of Travelers' lawyers.  While an attorney's affidavit alone cannot support a rate's reasonableness, *see Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (observing that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"), courts in the Fifth Circuit also employ their "'own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'"  *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 n.1 (E.D. La. 2009) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

The Court is satisfied that the hourly rates of Travelers' attorneys fall well within the range of rates allowed by other courts in this district.  *See, e.g.*, *M C Bank & Tr. Co. v. Suard Barge Serv., Inc.*, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017) (finding hourly rates of $395 for partner/member with over 30 years of experience, $350 for partner/member with over 17 years of experience, and $225 for associate with approximately three years of experience to be reasonable); *EnVen Energy Ventures, LLC v. Black Elk Energy Offshore Operations, LLC*, 2015 WL 3505099, at *2-3 (E.D. La. June 3, 2015) (finding hourly rates of $325 for partner/shareholder with 20 years of experience, $300 for associate with 10 years of experience, and $275 for associate with seven years of experience to be reasonable);  *Wagner v. Boh Bros. Constr. Co.*, 2012 WL 3637392, at *15 (E.D. La. Aug. 22, 2012) (finding hourly rates of $275 for partner/shareholder with 10 years of experience, and $235 for associate with four years of experience to be reasonable); *Foley v. SAFG Ret. Servs., Inc.*, 2012 WL 956499, at *2 (E.D. La. Mar. 20, 2012) (finding hourly rates of $350 for partner/member with over 30 years of experience, and $275 for associate with over eight

years of experience to be reasonable); *Johnson*, 639 F. Supp. 2d at 701-02 (E.D. La. 2009) (finding hourly rates of $300 for partners and $225 for associates to be within the customary range of rates in the New Orleans area); *Oreck Direct, LLC v. Dyson, Inc.*, 2009 WL 961276, at *6 (E.D. La. Apr. 7, 2009) ("The Court is familiar with the local legal market and notes that the top rate for partner-level attorneys here [*i.e.*, New Orleans] is between $400 and $450 per hour."); *Bd. of Supervisors of La. State Univ. v. Smack Apparel Co.*, 2009 WL 927996, at *4, *7 (E.D. La. Apr. 2, 2009) (finding that $325 was a reasonable hourly rate for attorney with 10 years of experience in a specialty practice and for attorney with 29 years of unspecialized legal experience).

As for the amount of time expended, the Court is generally satisfied that the time entries in the billing records reflect a sufficient level of detail and description about the number of hours charged and the nature of the services rendered as to support the conclusion that the bulk of the hours were reasonably expended and the services reasonably rendered.  Nevertheless, "[t]he [fee] applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (internal citation omitted). "Billing judgment requires documentation of the hours charged and of *the hours written off as unproductive, excessive, or redundant*."  *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (emphasis added). A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to demonstrate billing judgment. *Id.*; *Kellstrom*, 50 F.3d at 324.

Here, Travelers states that Krebs Farley & Dry "exercised ... billing judgment to ensure that Travelers's fee application does not include duplicative entries across multiple timekeepers."[29]

---

[29] R. Doc. 676-2 at 7.

While the Court can partially confirm such an assertion given its review of the billing records, neither the billing records nor the affidavits provide substantial guidance as to the hours expressly written off as duplicative or excessive.  As a further complication, because attorney Ross left the firm mid-litigation,[30] other Krebs Farley & Dry attorneys were brought onto the matter to replace her, necessarily requiring hours to bring them up to speed.  Whether the hours spent by other attorneys familiarizing themselves with the matter in order to replace Ross were written off is not immediately ascertainable.  And while the Court disagrees with the Indemnitors' unqualified assertion that Travelers' proposed lodestar is excessive and unreasonable, it does find that a discretionary reduction is appropriate here because the documentation before the Court falls short of demonstrating complete billing judgment in these noted areas. *Saizan*, 448 F.3d at 799.  Because "[t]he proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment," the Court reduces the total amount of the award by 5%, taking into account the complexity of the case, the number of documents produced, the discovery undertaken, the filings and appearances made, and the length of the litigation. *Id.*

Accordingly, reducing the requested award by 5%, the Court calculates the lodestar to be $869,000.62 (or $914,737.50 - $45,736.88 = $869,000.62).  Following this reduction, the Court finds that this amount in attorney's fees is appropriate, having also given consideration to the *Johnson* factors.

With respect to costs, Travelers seeks $52,859.05 in litigation costs, $16,535.14 in travel expenses, and $81,457.98 in outside consultant fees and costs, for a total of $150,852.17.[31]  In view of the length and complexity of the case, the amounts involved, Travelers' periodic need for

---

[30] *Id.* at 5.
[31] R. Docs. 676 at 3; 676-1 at 4.

various of its employees, such as its out-of-town claims counsel and assistant vice president for construction services, to make in-person appearances at meetings, hearings, depositions, and trial,[32] and its need to engage outside engineering consultants to investigate the dispute,[33] the Court finds the bulk of these costs to have been necessary and reasonable.  Again, this litigation spanned four years and Travelers faced a $5 million bond claim from the Parish, bolstering the conclusion that $150,852.17 in costs is proportionate to the needs of the case.  Nevertheless, the Court also finds it appropriate to reduce the award of costs slightly, also by 5%, because the documentation submitted by Travelers does not allow the Court to readily and fully ascertain the nature and details of the claimed costs.  But nor have the Indemnitors demonstrated with any precision the degree to which recovery of any of these items is unwarranted.  The Court chooses, then, to reduce the figure Travelers requests for costs by a factor of 5%.  Accordingly, the Court calculates the reduced award of costs to be in the amount of $143,309.56 (or $150,852.17 - $7,542.61 = $143,309.56).

The Indemnitors oppose Travelers' request for attorney's fees and costs on five grounds.[34] The Court will evaluate each in turn.  First, they argue broadly that Travelers' fee request is excessive because it is "requesting nearly $1 million in attorneys' fees, which is wildly out of proportion with the result obtained, an award [*sic*] of $612,000.00."[35]  This basis of comparison is plainly incorrect.  The $612,000.00 sum Travelers owes to the Parish in settlement, and which the Indemnitors must pay to Travelers in exoneration and indemnification, constitutes a fraction of the penal sum of the Bond ($5,009,908.00) that the Parish originally sought from Travelers.[36]  Facing the Parish's $5 million counterclaim, Travelers successfully negotiated a settlement obligating it

---

[32] R. Doc. 680 at 9-10.
[33] *Id.* at 10.
[34] R. Doc. 679.
[35] *Id.* at 5.
[36] R. Doc. 675 at 24.

10

to pay on its and the Indemnitors' behalf just over 10% of this amount – an outcome that at the very least supports an award approaching the lodestar calculation.  That the ultimate agreement optimized both Travelers' and the Indemnitors' position in settlement is shown by the fact that it called for the Parish to absorb the shortfall of $462,926.89 to fully fund the cost to complete the Project – an outcome the Indemnitors could hardly have expected going into the negotiations.[37] Accordingly, the argument that Travelers' attorney's fees are excessive because they are disproportionate to the outcome of the case is baseless.

Second, the Indemnitors argue that "Travelers' duplicative work is unreasonable."[38]  The crux of their argument is that "[b]ecause time was not of the essence in this case, the use of more than one attorney for basic tasks ... was not needed."[39]  The Court rejects this characterization of the work done by Travelers' attorneys.  The Court's review of the detailed billing records revealed that Krebs Farley & Dry did employ appreciable billing judgment in writing off many instances of duplicative billing (as it attests[40]), even though the Court also found that the documentation sometimes fell short of fully reflecting the firm's professed use of billing judgment.  The Indemnitors' argument is further undermined by their failure to acknowledge Travelers' "dual role as surety," which required counsel for Travelers "to review pleadings as well as discovery documents multiple times for different purposes, as Travelers faced not only the Parish's Bond claim but also [the Fuciches'] claims of bad faith."[41]  Finally, any claim that Travelers' duplicative work was unreasonable because "time was not of the essence" is unpersuasive, as the Indemnitors' own behavior throughout the litigation directly contributed to its protracted duration.[42]  Moreover,

---

[37] *Id.* at 47.
[38] R. Doc. 679 at 5.
[39] *Id.*
[40] R. Doc. 676-2 at 7.
[41] R. Doc. 680 at 9.
[42] *See* R. Doc. 675 at 57.

to the extent that duplicative work was included in Travelers' request for attorney's fees, the Court has already addressed this objection by reducing the total amount of the lodestar by 5%.

Third, the Indemnitors argue that Travelers prematurely hired outside counsel, rendering any attorney's fees that were accumulated prior to Travelers becoming a party to the suit "redundant and unnecessary."[43]  The timeline is instructive in assessing this argument.  On March 19, 2018, FCI initiated this suit against the Parish and Shread-Kuyrkendall & Associates, Inc.[44]  Travelers hired Krebs Farley & Dry as outside counsel on the matter "on or about June 22, 2018."[45]  On September 5, 2018, the Parish filed a counterclaim against Travelers for breach of the Project's performance bond – formally making Travelers a party to the suit.[46]  The Indemnitors' dispute on this point, then, is confined to the approximately two and a half months between the hiring of outside counsel and Travelers being made a party (a period in which, according to the Court's computation, the fees amounted to less than $20,000.00).   In making this argument, the Indemnitors ignore the reality that as early as May 2018 the principal of Travelers' bond, FCI, "refused to enter any agreement to complete the Project that would not result in its being paid for all its costs, overhead, and profit, including any additional costs, overhead, and profit associated with the work to correct the Rotational Conflict";[47] that FCI's failure "to mitigate its own exposure and to cooperate with the other parties to resolve the matter" continued, causing the Parish, on June 18, 2018, to send an email to Travelers asking it to make its election under section 5 of the Bond to arrange for FCI to complete the Project or to arrange for another contractor to do so;[48] and that on July 20, 2018, the Parish made a formal demand upon Travelers to respond under the

---

[43] R. Doc. 679 at 9.
[44] R. Doc. 675 at 16.
[45] R. Doc. 676-1 at 2.
[46] R. Doc. 675 at 24.
[47] *Id.* at 17-18.
[48] *Id.* at 18.

Bond.[49]   Given the timeline of FCI's unreasonable settlement posture and its and Travelers' increasing exposure under the Bond – exposure that became apparent as early as May 2018 – Travelers acted more than reasonably in hiring outside counsel in June 2018 to begin investigating the matter.  Thus, this argument is also without merit.

Fourth, the Indemnitors argue that "the travel costs [Travelers] incurred in the amount of $16,535.14 are excessive and unnecessary."[50]   The Court disagrees with the Indemnitors' conclusory assertion that the claimed travel expenses were unnecessary "[i]n the age of mobile phones and Zoom."[51]   After all, Travelers indicates that it "utilized virtual means on countless occasions throughout this litigation,"[52] but this does not mean travel cannot ever be reasonably necessary, especially in a case such as this where the personal presence of Travelers' out-of-town claims counsel was required to reinforce Travelers' position to the all-too-often tone-deaf Indemnitors.  Nonetheless, the Court has already weighed the vagueness of Travelers' travel expense documentation in its decision to reduce the cost award by a specified percentage.

Finally, the Indemnitors argue that "[m]ore than $80,000 in outside consultant fees" is unreasonable, outrageous, and unsupported, largely because Travelers has its own in-house engineer.[53]   The Court disagrees, finding that the need and amount incurred for outside consulting services were reasonable given the $5 million bond claim and the overall complexity of the construction dispute.  Nonetheless, the Court has already addressed the shortcomings of Travelers' documentation of the consultant fees in its decision to reduce the cost award.

---

[49] *Id.* at 20.
[50] R. Doc. 679 at 9.
[51] *Id.*
[52] R. Doc. 680 at 10.
[53] R. Doc. 679 at 11.

### B.  Conditions of the Permanent Injunction and Rationale for the Form of Judgment

Having determined that Travelers is entitled to a permanent injunction mandating specific performance of the collateral security provision of the GAI against the Indemnitors, the Court directed the parties to file memoranda addressing whether any conditions should attach to it.[54]  The Court also ordered the parties to address the rationale for the form of judgment to be issued.[55] Travelers complied with these directives; the Indemnitors did not.  Thus, the Indemnitors fail to dispute both the terms of the permanent injunction and the form of judgment Travelers proposes. The Court finds that the terms and conditions of the permanent injunction Travelers suggests – namely, "that the Indemnitors' collateral security currently in Travelers's possession must be applied to the Loss at such time as the future judgment entered by this Court can be executed upon or remain in place until the Indemnitors satisfy the Court's orders by indemnifying, exonerating, and holding Travelers harmless for all Loss Travelers incurred,"[56] and that the permanent injunction will "prohibit the Indemnitors from taking any action that may prevent Travelers from using any portion of the previously deposited collateral security until the Indemnitors satisfy the full amount of Travelers's Loss," and will permit Travelers to use or sell such collateral to satisfy the judgment[57] – are reasonable and in accord with the Court's findings of fact and conclusions of law and its prior orders.  Finally, having approved the terms and conditions Travelers suggests, the Court will enter a judgment in substantially the same form as the one Travelers proposes.

---

[54] R. Doc. 675 at 74.

[55] *Id.*

[56] R. Doc. 676 at 17.  The total loss, of course, consists of the settlement obligation ($612,000.00), and the attorney's fees and costs fixed herein ($1,012,310.18), plus any as-yet unincurred fees and costs that may later be awarded by the Court upon a subsequent fee application.

[57] *Id.* at 18.

III.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that the amount of the attorney's fees and costs awarded to Travelers is hereby fixed in the amount of $1,012,310.18, which together with the $612,000.00 settlement payment Travelers is entitled to recover from the Indemnitors by virtue of exoneration and indemnification, makes for a total award of $1,624,310.18.

New Orleans, Louisiana, this 11th day of January, 2023.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE